JACOB TOME *vs.* JOHN C. KING, Trustee, and ARCHIBALD STIRLING, JR., Receiver, in the matter of THE PEOPLE'S PASSENGER RAILWAY COMPANY. T. EDWARD HAMBLETON *vs.* SAME.

*Appeal—Character in which Appeal is taken—Right of Appeal—Form of allowing Commissions—Trustees' Commissions—Receivers' Commissions—Liability for Commissions allowed Receivers and Trustees—Costs—Cross-bill.*

A Passenger Railway Company negotiated two different loans, and for their security executed two several mortgages or deeds of trust, of all its property. The first of these instruments was executed to T. as trustee, on the 29th of July, 1879, to secure the payment of a loan of $100,000, with interest, for which coupon bonds were issued by the company, the interest payable semi-annually. And in case of default, for the period of two months, in the payment of either interest or principal, as it should become due, the deed provided in certain contingency, that the trustee should take charge

Tome and Hambleton *vs.* King and Stirling, &c.

of the mortgaged property and operate and manage the road to the best advantage, and should appropriate the net proceeds arising therefrom, as specified in the deed; or the trustee might sell the mortgaged property under a decree of a Court of equity. The second mortgage or deed of trust of the same property was executed by the company to H. and K. on the 5th of April, 1880, to secure a further loan of $75,000, created by the issue of coupon bonds, the interest payable semi-annually. This mortgage was made, by express terms, subject to the preceding mortgage to T. and it also provided, in. a certain contingency, for a sale of the mortgaged property. The company having made default in the payment of the interest due on the second mortgage bonds, the trustees in the second mortgage filed a bill on the 15th of January, 1883, alleging the default in the payment of interest due on the second mortgage bonds, and the insolvent condition of the company, and claimed the right to have a decree for the sale of the mortgaged property, by reason of said default. They also asked for the appointment of receivers to take charge of the property, and operate the road under the authority of the Court, until a decree was had. Neither the trustee nor the holders of the bonds under the first mortgage were made parties. Answers of the company and of other defendants were filed, and an order was passed appointing H. and S. receivers to take charge of the entire property. T. the trustee in the first mortgage, and on behalf of the first mortgage bondholders, was admitted on petition as a party defendant, and thereupon filed a cross-bill against the parties to the original bill, charging default in the company in the redemption of the interest coupons to the first mortgage bonds; and praying that the entire property should be sold and the proceeds distributed according to the rights and priorities of all parties concerned. Answers were filed to the cross-bill by several of the defendants. After further proceedings, the Court ordered a sale to be made under the second mortgage by H., K. and S. trustees appointed for that purpose, the sale to be made, however, subject to the rights of the parties under the first mortgage. Under this order no sale was effected. On the petition of the receivers S. and H. an interlocutory order was passed on the 11th of May, 1883, directing them to make sale of all the property, free, clear, and discharged of all claim of the parties to the proceedings. The property was accordingly offered by the receivers and was struck off to a purchaser at $83,000. On exceptions, the sale was rejected, by the Court. On the application of T. the Court passed another interlocutory order of sale, at the same time rescinding the pre-

vious order of the 11th of May, 1883, and appointed K. and S. trustees to make the sale, the same to be made free, clear, and discharged of both mortgages. These trustees offered the property and received a bid of $106,000 and so reported to the Court; but upon exception, this sale was also rejected by the Court. Subsequently a decree, professing to be a final decree, was passed, by which all previous orders of sale were rescinded; and the Court thereupon proceeded "to adjudicate and determine the case presented by the bill filed on the 15th of January, 1883, by H. and K. trustees under the second mortgage from the defendant company;" and, among other things, decreed a sale of the mortgaged property, subject, however, by express provision, to the first mortgage and all debts secured thereby. H. one of the trustees in the second mortgage having resigned, S. was associated with K. the other trustee to make sale. The sale was made under this decree for the sum of $6000, and was finally ratified by the Court. After the sale was ratified, the receivers made their report, showing their receipts and disbursements, and prayed to be allowed such compensation for their services as the Court might deem proper. Application for the allowance of counsel fees was also filed. The Court, by its order of the 3rd of July, 1884, ratified the receivers' report, and directed the allowance of certain counsel fees; and in the next place, "that there be allowed to S., K. and H., *in their respective capacities as receivers and trustees, in lieu of all other commissions to them, or any of them,* eight per cent. on the gross amount expended, disbursed or incurred by said receivers, * * * * and eight per cent. upon the sum of $106,000, *the amount of the first mortgage debt, and interest thereon, subject to which the said property was sold by the trustees under the final decree in this case.*" The proceedings were then referred to the auditor, with directions to audit the purchase money to the allowances specified, and to report the deficiency, if any, the same to be charged to, and paid by, the first mortgage bondholders. Under this order the auditor allowed on the receivers' disbursements of $16,479.60, and on the amount of the first mortgage bonds, principal and interest, $106,000, a sum total of $9,798.36, for commissions to the receivers and trustees. This amount, together with counsel fees, taxes, costs and charges, and reimbursement to receivers allowed, made an aggregate of $19,727.80; and after applying the $6000, the amount realized from the sale of the property, there remained a deficiency of $13,927.80, to be assessed to the first mortgage bonds according to the order of the Court. To the report of the auditor, H. in his own right as a first mortgage bondholder, and as one of the receivers, excepted,

Tome and Hambleton *vs.* King and Stirling, &c.

both as to the amount allowed and the manner of allowing the commissions; but the Court overruled the exceptions, and by its final order or decree of the 30th of December, 1884, to meet the deficiency of $13,927.80, ordered and directed T. as trustee for the first mortgage bondholders, to collect from each of said bond-holders mentioned in the auditor's report, the amounts assessed against them respectively, and to bring the same into Court by a certain day; and upon failure of the said first mortgage bond-holders to pay such assessments, or upon failure of T. to pay the same into Court by the day named, then T. as trustee should make public sale of the first mortgage bonded debt and security, and upon making the sale to convey the mortgage and mortgage debt to the purchaser. On appeal from this order by T. and H., it was HELD:

1st. That the appeals were rightfully taken from the order or decree of the 30th of December, 1884, which was the effective one, and not from the preceding order of the 3rd of July, 1884.

2nd. That the appeal of T. must be considered as taken by him as trustee, representing the first mortgage bondholders, it being in the character of such trustee that he was a party to the proceedings, and the decree against him, from which the appeal was taken, was made.

3rd. That H. was in a position to enable him to appeal; for while the decree was in his favor in the amount of commissions and re-imbursement allowed, yet, as a first mortgage bondholder, he or his firm would have to pay, over and above his share of the commis-sions, a large sum towards paying the commissions to his co-receivers, and to the trustees making the sale.

4th. That the allowance of commissions in the combined or collective form, was not justified by the practice in this State.

5th. That the trustees who made the sale were entitled to the estab-lished rate of commissions on the proceeds of sale, and nothing more.

6th. That the rule for compensating receivers is not of the same invariable character as that governing in the case of trustees; but the allowance to receivers of insolvent corporations or private partnerships, in all cases not attended with peculiar circumstances requiring an augmentation, should be regulated by analogy, as near as possible, to the rate of commissions allowed to guardians and trustees for the performance of like or kindred services. And

whatever rate of compensation under this rule, may be allowed, the order making the allowance should be definite, that it may not be doubtful upon what basis or for what services the particular allowance is made.

7th. That as the receivers were appointed solely at the instance and for the benefit of the second mortgage bondholders, and the trustees who sold the property were appointed to sell exclusively for the same parties, and not for the benefit of the first mortgage bondholders, upon no principle of justice or reason could the first mortgage bondholders be assessed to pay the commissions and other expenses allowed, or any part of them, to such receivers and trustees.

8th. That for any costs that may have been incurred by reason of the filing of the cross-bill by T., and for any proper proportion of the expenses incurred in the abortive efforts to sell the property for the common benefit of both sets of mortgage bondholders, T. as trustee was chargeable, but not for the commissions and amounts to indemnify the receivers.

9th. That if the fund in Court be not sufficient to afford adequate compensation and indemnity to the receivers, the parties at whose instance they were put upon the property, should be required to provide the means of payment.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The order of appeal, to which reference is made in the opinion of the Court, after titling the case, is as follows:

"Mr. Brewer:—Enter an appeal from the decree passed in the above cause on the 30th of December, 1884, on behalf of Jacob Tome.

MARSHALL & HALL,
Solicitors for Jacob Tome."

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, RITCHIE, and BRYAN, J.

*Thomas W. Hall,* and *Charles Marshall,* for the appellants.

*Archibald Stirling, Jr.,* and *John C. King,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

In order to the proper understanding of this case, and the questions raised on the two appeals in the record, it is necessary that we state briefly how and for what objects the proceedings were commenced, and in what order they were conducted.

The People's Passenger Railway Company of Baltimore City negotiated two different loans, and for their security executed two several mortgages or deeds of trust, of all its property of every kind and description. The first of these instruments was executed to Jacob Tome as trustee, on the 29th of July, 1879, to secure the payment of a loan of $100,000, with interest, for which coupon bonds were issued by the company, the interest payable semi-annually. And in case of default, for the period of two months, in the payment of either interest or principal, as it should become due, the deed provides that "the said trustee shall, and will, upon the written request of the holders of one-fourth in amount of the said bonds outstanding, and upon which such default to pay the said interest or principal shall have been made, *enter upon and take possession of the railroad, real and personal estate and premises hereby mortgaged,* or agreed or intended so to be, and shall and will thereupon himself, *or by such agent or agents as he may appoint, operate, manage, control, and use the said railroad, real and personal estate and premises,*—possession of which may be so taken, to the best advantage,—and appropriate the net income and proceeds to be derived therefrom, after deducting expenses, to the payment in full," first of the interest, and then of the principal of the bonds secured by the mortgage; or the trustee might, upon request of the holders of one-fourth in amount of the outstanding bonds, proceed under the

order or decree of a Court of equity, to sell the mortgaged property, and apply the proceeds of sale to the payment of the debt and interest.

The second mortgage or deed of trust was executed by the company to John A. Hambleton and John C. King as trustees, on the 5th of April, 1880, of all its property of every description, (being the same embraced in the preceding mortgage to Tome,) to secure a further loan of $75,000, created by the issue of coupon bonds, the interest payable semi-annually. This mortgage was made, by express terms, subject to the prior mortgage to Tome; and it also provided, that if the company made default for three months after demand of the semi-annual interest due on the bonds, the trustees should, upon request of the holders of one-fourth of the bonds outstanding and in respect to which default had been made, proceed under the order or decree of a Court of equity to sell the mortgaged property, and apply the proceeds of sale to the payment of interest and principal of such outstanding bonds. In less than three years after the last of these loans had been effected, the company became greatly embarrassed and made default in the payment of the interest due on the second mortgage bonds. Indeed it was so completely insolvent that it could not proceed in the operation of its road. In this state of things, the trustees in the second mortgage filed a bill on the 15th of January, 1883, alleging the default in the payment of interest due on the second mortgage bonds, and the insolvent condition of the company. To this bill, while the existence of the first mortgage was alleged, neither the trustee nor the holders of the bonds under that mortgage were made parties, nor was it in respect of any rights of those holding the first mortgage bonds that relief was prayed. The bill charged that the plaintiffs, under the terms of the second mortgage, were entitled to sell the mortgaged property, and to have a decree for such sale, by reason of the default

made in the payment of the interest due on the second mortgage bonds. But they charged that, inasmuch as some delay would occur in preparing the case for a decree for sale, the property in the meantime would likely suffer, and they therefore asked for the appointment of receivers to take charge of and care for the property, and, as far as possible, to operate the road under the authority of the Court, until the case could be matured for a decree. Answers of the company and several of the other defendants were filed on the same day of the filing of the bill; and immediately thereupon an order was passed appointing T. E. Hambleton and Archibald Stirling, Jr., receivers, with power to take charge of the entire property, and with authority to expend a small amount of money for the support of the stock. An injunction was also issued to restrain the company or its agents in any attempt to withhold any of the property from the receivers. After this the receivers were authorized by further order of Court to raise and expend money necessary to feed the live stock, and they were also authorized to sell a portion of such stock, which they did. At this stage of the proceeding Ed. I. Clark, an alleged second mortgage bondholder, intervened and asked that the property be sold at once by the trustees named in the mortgage. But before definite action was had upon this application, Jacob Tome, the trustee in the first mortgage, and on behalf of the first mortgage bondholders, intervened by petition, filed the 12th of March, 1883, and asked to be made a party defendant to the original bill, with leave to defend by answer or cross-bill; proceeding upon the ground, as alleged, that as all the property of the company had been placed in the hands of receivers appointed by the Court, under the bill filed by the trustees in the second mortgage, and thereby his power to enter upon, take charge of and operate the road, under the first mortgage, had been frustrated, he therefore applied to the Court for relief. He was on the

same day, by order, admitted as a party defendant; and
he thereupon, without delay, filed a cross-bill against the
parties to the original bill, charging default in the com-
pany in the redemption of the interest coupons to the first
mortgage bonds; and to avoid delay and unnecessary ex-
pense, he prayed that the entire property should be sold
and the proceeds distributed according to the rights and
priorities of all parties concerned.    On the 28th of March,
1883, the Court passed an order making Ed. I. Clark a
party defendant to the original bill, and a defendant to
the cross-bill of Tome, with leave to make defence to the
same.    Answers were filed to the cross-bill by several of
the defendants thereto, but Clark interposed a demurrer,
and that does not appear ever to have been disposed of.
On the 26th of April, 1883, Tome filed a petition, praying
that inasmuch as it was manifest that the property would
have to be sold under the decree of the Court, that an
order for sale of all the mortgaged property in question,
free and clear from all claims and equities of all parties,
be passed at once in anticipation of the final decree, and
that a trustee or trustees be appointed to make such sale.
But the Court, on the 27th of April, 1883, instead of pass-
ing an order of sale such as that prayed for in the petition
of Tome, proceeded to pass an order of sale, in which it
was stated, that the Court was satisfied that at the final
hearing a sale would be decreed of the property in the
proceedings mentioned, *under the second mortgage,* and
therefore ordered a sale to be made *under that mortgage,*
by John A. Hambleton, John C. King and A. Stirling,
Jr., trustees appointed for that purpose; the sale to be
made, however, *subject* to all the rights and estate of the
parties claiming under the first mortgage.    It is clear,
therefore, that under that order of sale, nothing but the
equity of redemption, which was covered by the second
mortgage, could have been sold.

Under this order of sale the property was offered, but
there was no bid received; and the trustees so reported.

Then the receivers, Stirling and Hambleton, filed a petition, representing the state of the property as being wholly unproductive, and that a sale thereof was called for at once for the interest of all parties concerned, and they therefore prayed that a sale should be ordered of the entire property, free and clear of all incumbrances thereon. On this petition an interlocutory order was passed, on the 11th of May, 1883, directing the receivers to make sale of all the property, free, clear and discharged of all claim of the parties to the proceedings, complainants and defendants; the proceeds of sale to be distributed under the direction of the Court. The property was offered by the receivers under this last order of sale, and was struck off to a purchaser at $83,000. The immediate ratification of the report of this sale was asked by Tome, and others, but Clark interposed exceptions, and, on his exceptions, the sale was rejected by the Court. Tome then renewed his application for an immediate sale of the property, and after some objection interposed, the Court, on the 6th of July, 1883, passed another interlocutory order of sale, at the same time rescinding the previous order of the 11th of May, 1883, and appointed King and Stirling trustees to make the sale, the same to be made free, clear and discharged of both mortgages. These trustees offered the property and received a bid of $106,000, and so reported to the Court; but, upon exception by Clark, and also the purchaser, this sale was also rejected by the Court. After the rejection of the last sale, the receivers applied to the Court, on the 27th of September, 1883, for leave to use the horses, cars, and other property in their hands, in the operation of the road, until a sale could be effected; and such permission was given by the Court. The next move made with a view to effecting a sale of the property, was a petition filed by Tome, on the 22d of December, 1883, setting forth the various attempts that had been made to sell the property, and their failure, and praying that the

property should no longer be offered to be sold free and clear of the first mortgage, and that all previous orders of Court contemplating the sale free and clear of that mortgage should be rescinded, and that any future order or decree of sale should direct the sale to be made subject to the first mortgage. After this the decree of the 8th of March, 1884, professing to be a final decree, was passed, and by which all previous orders of sale were expressly rescinded; and thereupon the Court proceeded "to adjudicate and determine the case presented by the bill filed on the 15th of January, 1883, by Hambleton and King, trustees, under the second mortgage from the defendant company;" and, among other things, decreed a sale of the mortgaged property, subject, however, by express provision, to the first mortgage and all debts secured thereby. The decree was passed, as is manifest upon its face, exclusively with reference to foreclosure, by sale, of the second mortgage, and the relief prayed by the cross-bill filed by Tome was entirely disregarded in the decree, as if there had been no such bill filed in the cause. John A. Hambleton, one of the trustees in the second mortgage, having resigned, Archibald Stirling, Jr., was associated with John C. King, the other trustee, to make the sale. The sale was made under this decree for the sum of $6,000, and was finally ratified by the Court.

After the sale was ratified, the receivers made their report, showing what had been received and what expended during the time the property was in their hands; and they prayed to be allowed such compensation for their services as the Court might deem proper. Applications for the allowance of counsel fees were also filed; and upon the receivers' report, and the applications for counsel fees, the Court, by what would appear to have been an order passed without notice to the parties to be affected, ratified the receivers' report, and directed that there should be allowed and audited certain counsel fees; and in the next

place, <sup>&</sup> that there be allowed to Archibald Stirling, Jr., John C. King and T. Ed. Hambleton, *in their respective capacities as receivers and trustees, in lieu of all other commissions to them, or any of them,* eight per cent. on the gross amount expended, disbursed or incurred by said re-ceivers, as shown by their report, and as the same may be shown to the auditor by proper vouchers; *and eight per cent. upon the sum of* $106,000, *the amount of the first mortgage debt, and interest thereon, subject to which the said property was sold by the trustees under the final de-cree in this case.*" The proceedings are then referred to the auditor, with directions to audit the purchase money to the allowances specified, and that the auditor report the deficiency, if any, the same to be charged to the first mortgage bondholders, and to be paid by them; with the further direction to take testimony to ascertain who were the first mortgage bondholders at the time of the sale, and in what proportions they held the same; "the mode of enforcing said payment to be determined by the further order of the Court."

Under this order the auditor proceeded, and by his statements returned into Court, the amount of commissions allowed on the receivers' disbursements of $16,479.60 is $1,318.36: and on the amount of the first mortgage bonds, principal and interest, $106,000, the amount of commis-sions is $8,480.00; making a sum total of $9,798.36, for commissions to the receivers and trustees. This amount, together with counsel fees, taxes, costs and charges, and reimbursement to receivers allowed, make an aggregate sum of $19,927.80; and after applying the $6,000, the amount realized from the sale of the property, there re-mained a deficiency of $13,927.80, to be assessed to the first mortgage bonds, according to the order of the Court. To the report of the auditor, T. Ed. Hambleton, in his own right as a first mortgage bondholder, and as one of the receivers, excepted, both as to the amount allowed and

the manner of allowing the commissions; but the Court overruled the exceptions, and by its final order or decree of the 30th of December, 1884, to make up the deficiency of $13,927.80, ordered and directed Tome, as trustee for the first mortgage bondholders, "to require, demand and collect forthwith, from each of the first mortgage bondholders mentioned in the auditor's report, the amounts assessed against them respectively, as set forth in that report, and to bring such sums into Court, on or before the 15th of January, 1885, and upon failure of the said first mortgage bondholders to pay such assessments so made, or upon the failure of Tome to pay the same into Court by the day named, then Tome, as trustee, is ordered and directed to make sale, at public auction, of the said first mortgage bonded debt and security, with all the rights of the first mortgage bondholders therein and thereto attaching," etc.; and upon making the sale to convey and assign the mortgage and mortgage debt to the purchaser. It is from this order or decree that both T. Edward Hambleton and Jacob Tome have appealed.

The first question presented to this Court is as to the right of the appellants to appeal from the final order or decree of the 30th of Dec. 1884. It is contended that they have no such right. But it is very clear that the appeals were properly taken from that order or decree, and not from the preceding order of the 3d of July, 1884. In respect to the commissions, and reimbursement to the receivers, there was nothing definitively decreed that could be enforced, until the making of the decree of the 30th of Dec. 1884. It was not until then that the matter of the preceding decretal order was put in form to be enforced against the parties whose rights were to be affected, and therefore the last order or decree was the effective one, and that from which the appeals could be rightfully taken. And with respect to the question made as to whether the appellants have taken the appeals in the

Tome and Hambleton *vs.* King and Stirling, &c.

proper character to entitle them to have the decree reviewed, we think that is equally clear. Tome, in his character of trustee, was a party to the proceedings, and it was against him in that character that the decree appealed from was made. It would be hypercritical to construe the order to the clerk to enter the appeal, as having been intended to assert the right of appeal in any other character or relation than that in which he was party to the case, and as such entitled to take the appeal. The order should be fairly construed with reference to the relation of the appellant to the proceeding, and the nature of the decree against him; and so construing the order for appeal, we are of opinion that the case is here on the appeal of Tome as trustee, representing the first mortgage bondholders. And as to the appeal of Hambleton, he was one of the receivers, and while the decree, in one sense, was in his favor, in the amount of commissions and reimbursement allowed, yet, as a first mortgage bondholder, he or his firm would have to pay, over and above his share of the commissions, the sum of $2,026.45 towards paying the commissions to his co-receivers, and to the trustees making the sale. This certainly put him in position to entitle him to appeal from the decree. The motion to dismiss these appeals must, therefore, be overruled.

The questions presented by the appeals are, 1st. Whether it be according to any settled principle or rule of practice in this State, that commissions should be allowed in a combined or collective form, such as was adopted in this case; and, 2nd. Whether it was competent, under the circumstances of this case, to award commissions either to the receivers, or to the trustees making the sale, and other charges and expenses, in respect to the first mortgage bonds, and to make assessments thereon for payment; and in default of payment, to direct the whole mortgage debt and security thereof to be sold, and the same to be transferred to the purchaser.

1. In regard to the form in which these commissions were awarded, we know of no practice to justify it. With respect to commissions to be allowed to trustees for making sales under the orders of Court, we suppose all the Circuit Courts of the State, exercising equity jurisdiction, following the practice of the old Court of Chancery, have established rules fixing the rates of commission to be allowed to such trustees ; and those rules are imperative both upon Court and the persons accepting trusts at the hands of the Court. The Court has no power to disregard them, for by so doing the rights of the suitor would be invaded. Such rules are the law of the Court, and stand as a safeguard to the suitor against the exercise of unrestricted or arbitrary discretion in awarding compensation to trustees acting under the authority of the Court. The suitor has a right to know, as far as it is practicable, by what rule, and for what services, his money is appropriated, and that could never be known if the form of awarding commissions adopted in this case were sanctioned. The trustees who made the sale are entitled to the established rate of commissions on the proceeds of sale, and nothing more. If the mortgage or deed of trust had fixed a particular rate of commissions, provided it was reasonable as against third parties who might be affected, that rate would govern ; but, in this case, no such definite rate is fixed by the terms of the second mortgage, and therefore the rate established by rule of Court must govern.

But while such is the rule in regard to the allowance of commissions to trustees, the rule for compensating receivers is not of that same invariable character as in the case of trustees, owing to the different nature of the services to be performed. Therefore it was held by Chancellor JOHNSON, in the case of *Abbott vs. The Steam Packet Co.*, 4 *Md. Ch. Dec.*, 310, that it had not been the uniform practice of the Court to allow receivers of insolvent corporations and private partnerships a commission of eight per cent., the

amount claimed in that case, in analogy to the rate of commissions allowed to insolvent trustees, but the allowance in such cases had been controlled by the circumstances of each case, rather than by any fixed, invariable principle or analogy. But as a *general rule* governing all cases not attended with peculiar circumstances requiring an augmentation, the allowance to receivers of insolvent corporations or private partnerships should be regulated by the general rule for allowing commissions to trustees. And where a receiver is appointed to manage and operate the business of a corporation, his compensation, depending upon the circumstances of the case, should be regulated by analogy, as near as possible, to the rate of commissions allowed to guardians and trustees for the performance of like or kindred services. This has been the long established principle upon which compensation has been allowed to receivers in this State, and we think it just and reasonable, and that it should be adhered to by the Courts. And whatever rate of compensation, under this rule, may be allowed, the order making the allowance should be definite, that it may not be doubtful upon what basis or for what services the particular allowance is made.

2. But the principal question presented by these appeals, is that in regard to the right of the Court to assess the first mortgage bonds to pay the commissions and expenditures allowed to the receivers and trustees.

It is contended by the appellees that Tome, as the representative of the first mortgage bondholders, was a party to the proceedings, and that, therefore, the fund represented by him was not only liable to be decreed upon, but was liable for the commissions and disbursements that were allowed to the receivers and trustees. Whether this be so or not depends upon circumstances. It is certainly true, as a general rule, as contended by the appellees, that where a subsequent mortgagee or other incumbrancer

files a bill for the purpose of ascertaining the extent of priorities, making a prior mortgagee a party, but without offering to redeem, the prior mortgagee may insist upon being dismissed with costs. But if such prior mortgagee or incumbrancer, instead of asking to be dismissed, consents to a sale and to take his principal and interest out of the proceeds, as he thereby adopts the suit and takes the benefit of it, he must contribute, in the event of a deficiency of the fund, to the costs of the suit and expenses of the sale; and therefore such costs and expenses will be paid out of the fund, even though there may not be enough left to pay the prior incumbrancer his principal and interest. *White vs. Bishop of Peterborough, Jac.,* 402; 3 *Dan'l Ch. Pr.,* 1530. But that is not this case. Here, as we have seen, the original bill was filed by the trustees in the second mortgage without making the first mortgagees or any of them parties. It was at the instance of the second mortgagees that the property was placed in the hands of receivers, and by so doing the right and power of the trustee in the first mortgage to take possession and operate the road, as authorized by that deed, was defeated; and as that was the effect of placing receivers on the property, the trustee in the first mortgage should have been made a party to the bill filed by the trustees for the second mortgage bondholders. *Miltenberger vs. Logansport R. Co.,* 106 *U. S.,* 286, 306. But that was not done; and the receivers were appointed, and they took possession of the entire property, for the benefit of the second mortgage bondholders, without an opportunity on the part of the trustee for the first mortgage bondholders to be heard. It was not until some time after the receiver had taken possession of the property, and some portion of it had been sold, that Tome, as trustee, intervened by petition, and upon being admitted as a party defendant, filed his cross-bill, in which he prayed for a sale. In two of the efforts made to sell the property under interlocutory orders, he joined, but

those efforts wholly failed. In the final decree for sale, the property was decreed to be sold subject to the first mortgage, and therefore the first mortgage bondholders were in no manner affected in their rights by that sale. The sale having been made subject to the first mortgage, in no event could the first mortgage bondholders participate in the distribution of the proceeds of that sale, even though such proceeds had greatly exceeded the second mortgage debt,— that sale only operating upon the equity of redemption covered by the second mortgage. *Woodworth vs. Blair*, 112 *U. S.*, 8.

Seeing then that the receivers were appointed solely at the instance and for the benefit of the second mortgage bondholders, and that the trustees who sold the property were appointed to sell exclusively for the benefit of the same parties, and not for the benefit of the first mortgage bondholders, upon what principle is it that the first mortgage bondholders should be made to pay the commissions and expenses allowed, or any part of them, to such receivers and trustees? We must confess we are at a loss to understand how it can be done, upon any principle of justice or reason. None of the first mortgage debt has been realized by sale, and that incumbrance remains intact. It is said, however, that the property was purchased at the sale for the benefit of the holders of the first mortgage bonds, and that therefore they were benefited by the sale. But we do not perceive how that fact, supposing it to be true, can justify the charging those bondholders with the commissions and other expenses in question. The objects in filing the original bill were to have receivers appointed, and a sale of the property decreed, and. that too without the consent or co-operation of the trustee of the first mortgage bondholders, and both objects of the suit were gratified strictly in conformity to the prayer of the bill. The property having been sold for the benefit of the second mortgage bondholders, it was a right

of the first mortgage bondholders, or any one or more of them, to purchase in the equity of redemption, or if it had been sold to a stranger, they could have purchased it from him as well; and by such purchase they rendered themselves liable for nothing more than the purchase money—certainly not for commissions and expenses to the receivers and trustees on an amount that still remains a charge upon the property, and subject to which they made the purchase. There is therefore no ground whatever for the attempted assessment and summary sequestration and sale of the whole first mortgage debt with its security, for the payment of the commissions and other amounts allowed by the decree. For any costs that may have been incurred by reason of the filing of the cross-bill by Tome, and for any proper proportion of the expenses incurred in the abortive efforts to sell the property for the common benefit of both sets of mortgage bondholders, Tome as trustee is chargeable, but not for the commissions and amounts to indemnify the receivers. If the fund in Court be not sufficient to afford adequate compensation and indemnity to the receivers, the parties at whose instance they were put upon the property should be required to provide the means of payment.

It follows from the views we have expressed that the final order or decree of the 30th of Dec. 1884, and the preceding order of the 3d of July, 1884, must be reversed, in so far as the first mortgage bonds are assessed for the purpose of raising a fund of $13,927.80, to make good the deficiency as shown by the auditor's statements, referred to in the final decree from which these appeals are taken.

*Decree reversed, and
cause remanded.*

(Decided 24th June, 1885.)