[No. 4759.]

## THE HENDRIE & BOLTHOFF MANUFACTURING COMPANY
### v. PARRY ET AL.

1. **Receivers—Expenses for Supplies and Labor—To Whom Allowed.**

Allowances to a receiver for the expenses of the receivership should be made to the receiver himself, and not to those who furnish supplies to, or perform labor for, him.—P. 364.

2. **Practice in Civil Actions—Receivers—Creditors of Receivers —Intervention in Original Action.**

Where, in an action by a creditor against a mining corporation, a receiver was appointed and was still in office, it was error to allow creditors of the receiver to intervene in the original action over objection of plaintiff and litigate the question of the latter's liability for the expenses of the receivership; for if such claims were just charges as legitimate expenses of the receivership, if not already so taxed, they should have been taxed as costs in the case in favor of the receiver, with a direction to that officer to make proper distribution to the parties entitled thereto.—P. 364.

3. **Receiver—Improper Appointment—Fund Seized Inadequate— Liability of Plaintiff for Expenses.**

A plaintiff who improperly secures the appointment of a receiver, and not the defendant whose property is wrongfully taken from him, is liable for the legitimate expenses of such receivership; and a plaintiff may be held, when the appointment is proper, if the fund seized is inadequate for such expenses. —P. 365.

4. **Mines and Mining—Receivers—Powers—Statutory Construction.**

Where, in an action by a creditor against a mining corporation, a receiver was appointed as authorized by Mills' Ann. Stats., § 497, and the order appointing him recited "with all the powers usual in receivership cases and to take charge of the affairs and property of the defendant company," he had no authority to work the company's mines, and could only take charge of such property for the purpose of closing out the business.—P. 366.

5. **Receivers—Officers of Court, Not Agents of Litigants.**

A receiver is not the agent of any party to the suit, but an officer of the court; and he can exercise only such power as is expressly conferred upon him in the order of appointment and under such practice.—P. 367.

**6.  Mines and  Mining — Statutory  Construction — Receivers — Powers.**

Mills' Ann. Stats., § 497, providing for the dissolution of mining corporations and the appointment of receivers to close up the business, does not confer power upon the court to authorize a receiver to work the company's mines.—P. 367.

**7.  Receivers—Powers—Contracts—Knowledge  of  Authority— Presumption.**

The record order of appointment of a receiver is the measure of the limit of his powers, and persons dealing with a receiver are charged with knowledge of his functions, and contract with him at their peril; they are presumed to know the contents of the pleadings in the action in which he was appointed, and are charged with knowledge of the order which defines his powers; and those who furnish supplies to, or perform labor for, him, are, in law, supposed to know whether he possesses the powers which he assumes to exercise.—P. 367.

**8.  Mines and  Mining—Receivers—Exceeding Authority—Liability for Expenses.**

Where, in an action by a creditor against a mining corporation, a receiver was appointed who had no authority to work the mines, his expenses incurred in so doing could not, in any event, be taxed as costs in the case in his favor and made a charge against either party to the action; nor could they be awarded directly to those with whom the receiver contracted the indebtedness.—P. 367.

**9.  Practice in Civil Actions—Receivers—Wrongful Appointment —Expenses for Labor and Supplies—Liability of Plaintiff —Issue Not Triable in Original Action.**

Where, in an action by a creditor of a mining corporation in which a receiver was appointed, the creditors sought to charge the plaintiff with liability for labor and supplies furnished the receiver on the ground that the former had wrongfully had the latter appointed, such creditors cannot litigate, in the original action, the question of such liability either upon such ground or upon the further grounds that plaintiff approved of the illegal acts of the receiver in incurring such expenses, and also entered into a conspiracy with others to dispossess the company's managing officers and throw the property into the hands of a receiver with power to work the mines for their benefit; but such alleged liability should be determined in an independent suit. —P. 368.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Samuel L. Carpenter, Judge.*

Action by The Hendrie & Bolthoff Manufacturing Company against The Crown Point & Virginia Gold Mining Company, in which Samuel Hyman and Joseph Hiller, as copartners under the name of Hyman & Hiller, intervened; and, upon motion of plaintiff and intervenors, S. A. Josephi was appointed receiver, subsequently removed by the court, and Michael Spangler was appointed, who served until killed, and the court thereupon appointed A. B. McGaffey. Thereafter Sarah Parry, Sarah Ann Parry, as executrix of the estate of Thomas Parry, deceased, and Frank Mayhew, intervened in such action, and sought to hold plaintiff company directly liable for the expenses incurred by receiver Spangler. From a judgment in favor of such last intervenors, the Hendrie & Bolthoff company appealed.

*Reversed.*

Mr. JOHN M. WALDRON and Mr. R. D. THOMPSON, for appellant.

Mr. CHASE WITHROW and Messrs. THOMAS, BRYANT & MALBURN, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This controversy, concerning expenses incurred by a receiver, is between a plaintiff who secured his appointment, and the assignees of those who furnished supplies to, and performed labor for, him.

In an action brought in the district court of Arapahoe county by appellant, the Hendrie & Bolt-

hoff company, as a judgment creditor, against The Crown Point & Virginia Gold Mining Company, the judgment debtor, in which Samuel Hyman and Jonas Hiller, as minority stockholders of the defendant company, intervened, the court, upon the request both of the plaintiff and the intervenors, appointed S. A. Josephi receiver on August 7, 1897. The action was based upon section 497, 1 Mills' Ann. Stats. The complaint charged various acts of fraud and mismanagement on the part of the defendant company, and that it had permitted executions upon the judgments of plaintiff and other judgment creditors to be returned *nulla bona,* and to remain unsatisfied for more than ten days after demand for payment. The cause of action, under this statute, if established, entitled plaintiff, and its object was, to secure a dissolution of the defendant corporation, and to apply its property to the payment of its debts. To effectuate this purpose, the plaintiff, as the statute expressly authorized, asked for the appointment of a receiver to take possession of defendant's assets, and to convert the same into money, and therefrom pay the indebtedness, and asked that the receiver be clothed with the usual powers. The intervening minority creditors also asked for the appointment of a receiver, and requested that he be given the power to operate the defendant's mines under the order of the court, and to apply the proceeds to the payment of the corporate debts.

Josephi, as receiver, was specifically given power to operate the mines of defendant, and, during his receivership, which continued for about a month, he worked them at a profit. Soon after Josephi's appointment, the defendant and certain of its judgment and mortgage creditors appeared in the action, all of whom objected to the appointment of any receiver at

all, and, in particular, asked that Josephi be removed upon the ground that he was not a fit person. Upon a hearing, Josephi was removed, but the court, deeming it proper that the receivership be continued, appointed Michael Spangler as receiver September 6, 1897, "with all the powers usual in receivership cases, and to take charge of the affairs and property of the defendant company." Spangler continued to act as a receiver until he was killed while working in the mine on the 6th of December, 1897.

Afterwards, A. B. McGaffey was appointed receiver. It appeared, in one of McGaffey's reports, that, during Spangler's receivership, an indebtedness of several thousand dollars was incurred in working the mine. It also appeared that, for the protection and preservation of the property, certain sums of money were needed, and to pay this Spangler indebtedness and preserve the property, McGaffey asked the court for an order permitting him to borrow money on receiver's certificates, and to make the same a paramount lien upon the trust estate. The court made the order, from which Standley and other creditors of defendant appealed to this court, where it was held, *Standley v. Hendrie & Bolthoff Mfg. Co.*, 27 Colo. 331, that the order was erroneous, and the judgment was reversed.

After the remittitur was sent down, Parry and others (appellees here) intervened in the original action, and filed their petitions, in substance detailing the foregoing facts, in which they asked for judgment directly against the plaintiff company for the amount of the Spangler indebtedness, the claims for which petitioners then owned. They based their right to a recovery on the grounds that, as it is conceded, and as appears from the opinion in the Standley case, the entire property of the defendant was

consumed by mortgage and other liens ahead of the claims of the judgment creditors, and, as the receiver himself had no funds out of which to pay the same, plaintiff, who improperly secured the appointment of the receiver, should be adjudged to pay the expenses incurred by Spangler in working the mines.

The plaintiff, Hendrie & Bolthoff company, objected, not only to the procedure chosen by petitioners for the enforcement of their claims, but denied all liability under the facts of the case. From a judgment in favor of appellees, the intervening petitioners, the Hendrie & Bolthoff company, appealed. Such other facts as are material to the discussion will be found in the appropriate places in the opinion.

1.   First, we consider appellant's objection to the procedure which appellees selected. The general rule is, that allowances to a receiver for the expenses of the receivership should be made to the receiver himself, and not to those who furnish supplies to, or perform labor for him.—*Stuart v. Boulware*, 133 U. S. 78; *German Nat. Bank v. Best*, 32 Colo. 192; *Bassick M. Co. v. Schoolfield*, 15 Colo. 376, 378; *Antlers L. & R. Co. v. Fesler*, 14 Colo. App. 201. In the last case it was said that it was irregular to enter a judgment in the receiver's favor, because he was not a party to the suit. If that be true, *a fortiori* is it wrong to render judgment in favor of creditors of the receiver.

No provision of our code of procedure has been cited which permits creditors of a receiver to intervene in the original action and litigate against a plaintiff the question of his liability for the expenses of the receivership. It is true that there is, or may be, an exception to the general rule, but, as stated in the German National Bank case, *supra*, that rule does not sanction the proceeding adopted below.

The question of the liability of the plaintiff in the original action for the debts of the receivership was, by consent of the plaintiff, litigated in that case. But the receiver had long before that time been discharged, and was not within the jurisdiction of the court, and, in view of these considerations, and that the plaintiff gave its consent, it was held not improper—at least, plaintiff could not complain—that the court entered judgment against the plaintiff directly and in favor of those who had furnished labor and material to the receiver, instead of taxing the expenses as costs in the action. The case in hand does not fall within the exception. Here the receiver was still in office; plaintiff objected to the proceeding; and, if these claims owned by appellees were just charges as legitimate expenses of the receivership, if not already so taxed, they should have been taxed as costs in the case in favor of the receiver, with a direction to that officer to make proper distribution to the parties entitled thereto. But graver errors were committed, which compel us to set aside the judgment in its entirety, and these we proceed to consider.

2.   It has been ruled that a plaintiff who improperly secures the appointment of a receiver, and not the defendant whose property is wrongfully taken from him, is liable for the legitimate expenses of such receivership, and that a plaintiff may be held, when the appointment is proper, if the fund seized is inadequate therefor.—*German Nat. Bank v. Best, supra; Welch v. Renshaw,* 14 Colo. App. 526; *Highley v. Deane,* 168 Ill. 266; *Radford v. Folsom,* 55 Ia. 276; *Weston v. Watts,* 45 Hun. 219; *Verplanck v. Ins. Co.,* 2 Paige (Ch.) 437; *French v. Gifford,* 31 Ia. 428; *Farmers' Nat. Bank v. Backus,* 74 Minn 264; *Tome v. King,* 64 Md. 166; *St. Louis, etc., R. R. Co. v. Wear,* 135 Mo. 230.

The question is, whether, upon the case made by the pleadings and evidence, the liability of the Hendrie & Bolthoff company, plaintiff in the original action, for the Spangler indebtedness, can be determined in a proceeding incident or ancillary to the original action. In the Standley case, *supra*, it was decided that the statute upon which the original action was founded gave to a court of equity an authority which otherwise it did not possess to decree at the suit of an individual the dissolution of a corporation, and, as incidental to the suit, to appoint a receiver to take charge of the defendant's property for the purpose of closing out its business, though it did not clothe the court with power to authorize the receiver to continue or to carry on the business of the corporation. It therefore held that the expenses of a receiver, even though he was acting under an order of court specifically empowering him to carry on such business, could not be satisfied out of the property of the defendant corporation, to the prejudice of those holding prior subsisting liens thereon.

From the foregoing statement, it is clear that the plaintiff company, when it asked for a receiver, demanded only what it had a clear legal right to receive under the provisions of the statute in question, and had the court, in the order of appointment, limited the receiver's powers to those which could be lawfully conferred, probably this controversy would not have arisen. But what Josephi may have done as a receiver is of no consequence to appellees. He worked the mines at a profit, and appellees' claims were incurred long after he was ousted. We do not attach any importance to the fact that plaintiff objected to the removal of Josephi and the appointment of Spangler, for, in the order appointing Spangler, he was not given power to work the mines, but only the power which is usual in receivership

cases.   Under such an order, the power of a receiver would be only such as that officer can exercise under section 497, and such as is derived from the established practice of a court of equity in similar cases. The receiver is not the agent of any party to a suit, but an officer of court.   He has, and can exercise only such power as is expressly conferred upon him in the order of appointment and under such practice. —High on Receivers, §§ 1, 186, 796; *Tripp v. Boardman,* 49 Ia. 410; *Ellis v. Little,* 27 Kan. 707; *Verplanck v. Ins. Co., supra,* Beach on Receivers, §§ 2 and 4.

Appellees say that Spangler was clothed with all the authority which was conferred upon Josephi, but the trial court held, in which we concur, that such was not the case.   The order did not purport to give him power to work the mines, and the court could not do so, if such had been its intention.   The record order of appointment is the measure of the limit of his powers.   Persons dealing with a receiver are charged with knowledge of his functions, and contract with him at their peril.   They are presumed to know the contents of the pleadings in the action in which the receiver was appointed, and are charged with knowledge of the order which defines his powers.   Those who furnish supplies to, or perform labor for him are, in law, supposed to know whether he possesses the powers which he assumes to exercise.

Applying this doctrine to the facts of this case, it follows that the debts which Spangler incurred in working the mines could not, in any event, be taxed as costs in the case in his favor and made a charge against either party to the action.   If that be so, certainly they cannot be awarded directly to those with whom the receiver contracted the indebtedness. We have already held that, even in a case where the

expenses of the receiver are properly chargeable as costs in the original action, judgment for them cannot be awarded to a creditor of the receiver, but the award must be in the nature of costs in the receiver's favor, with a proper direction for distribution. But in a case where the expenses of a receivership are incurred, as were those of Spangler, without authority of the court, they cannot be taxed as costs in the original action in his favor, and, not being properly taxable as costs, the question of the liability of some party to the suit therefor cannot be litigated in that action over his objection.

In argument, counsel for appellees seek to fasten liability on plaintiff because it approved the illegal acts of Spangler, and there was collusion between it and the intervening minority stockholders whereby they conspired to dispossess defendant's managing officers and throw its property into the hands of a receiver to whom power to work the mines for their benefit was requested. Such was not the cause of action relied on. The sole right of recovery alleged was that plaintiff wrongfully had a receiver appointed. Not only were these other questions not raised by the pleadings or decided below, but no such issues could be raised or tried in the original action for the reason already stated, any more than could be the issue actually tendered. Apparently the trial court decided the case upon one or more of such extraneous and absent issues, for, in its opinion, the statement is made that, though Spangler had no authority from the court to work the mines, yet as plaintiff's object by its suit must have been to secure a receiver to work them with a view to its possible profit or benefit, and as plaintiff knew and approved of Spangler's operations, it ought to respond for his expenses. If it be true that, because of collusion, fraud and acquiescence, plaintiff should, in equity

and good conscience, be charged with the Spangler indebtedness—as to which we express no opinion—it is altogether clear from the foregoing discussion that appellees have made no such case in the pleadings, and, if they had, could not try such issues in the original action. If they have any such cause of action, they may try it, as well as the one already pleaded, in an appropriate suit, without prejudice by reason of this decision.

Our decision here reversing the judgment is made, first, because of the erroneous procedure followed; and, second, because, under the uncontradicted evidence that Spangler had no authority, and could have obtained no valid order from the court to work the mines, and, as a necessary deduction, his expenses therein could not be taxed as costs of the receivership, the question of plaintiff's liability therefor could not be determined in the original action or in a proceeding supplemental or ancillary thereto. If expenses have been incurred by a receiver in violation of the court's order, or without the court's authority, he may be personally liable therefor, but they cannot be properly taxed in his favor as costs of the action, and made a charge against any of the parties to the suit. The necessary corollary is, that the liability of the plaintiff, or of any other party to the suit therefor, cannot be litigated in the original action, but should be determined in an independent suit.

The judgment must be reversed and the cause remanded. The decision here, however, is without prejudice to the rights of appellees to proceed further in another action against the plaintiff, as they may be advised.                      *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.