First National Bank of Clarksville *v.* Scranton Coal Company.

Opinion delivered December 10, 1928.

644

*Evans & Evans,* for appellant.

*I. S. Simmons* and *Cochran & Arnett,* for appellee.

MEHAFFY, J. On the 6th day of January, 1927, the First National Bank of Clarksville filed suit in the chancery court of Logan County, Arkansas, against the defendant, Scranton Coal Company, to foreclose a second mortgage upon the property of the coal company and to obtain an order appointing a receiver to take charge of the coal company's property, covered by the bank's mortgage. The American Bank & Trust Company of Paris, Arkansas, held first mortgage on the property.

The appellant alleged that the coal company was indebted to it, and that said indebtedness was secured by a mortgage, a copy of which was attached to the complaint; that said mortgage of appellant was subject to a prior mortgage securing the sum of $3,200 to the American Bank & Trust Company of Paris, Arkansas. It asked that the American Bank & Trust Company be made a party and required to appear and answer. Appellant also stated in its complaint that the defendant coal company was indebted to various parties in considerable

sums, all of which was due and payable, and that numerous creditors of defendant were impatient and demanding settlements, and would commence litigation unless a receiver was appointed. That the payroll for labor, due the 31st of December, was unpaid; that certain laborers had already begun suits for the amounts due them and attached certain property, and that other laborers would sue, and that the defendant would be greatly harassed, its operations obstructed, and its property dissipated in cost and expenses unless a receiver was appointed. It stated that the coal company was not insolvent; that its assets greatly exceeded its liabilities, and, with proper management of its affairs, it could be so handled as to enable it to pay fully all its obligations and preserve and protect its property. It alleged that it sued on its own behalf and for the benefit of all creditors of defendant, and asked, upon a final hearing, that it have judgment against the defendant for the amount due it and a foreclosure of its mortgage and sale of the property to pay said indebtedness. The complaint was verified by the president of the bank. The notes and mortgages were filed as exhibits to plaintiff's complaint.

On the same day that the suit was filed, the Scranton Coal Company entered its appearance, and consented to the appointment of a receiver, and the chancellor on the same day appointed a receiver, as prayed for in plaintiff's complaint.

The American Bank & Trust Company filed answer, intervention and cross-complaint, setting forth the indebtedness of the Scranton Coal Company to it, and filed with its answer the note and mortgage, and asked judgment and foreclosure, and that the property be sold.

Numerous other interventions of creditors of the Scranton Coal Company were filed. The receiver then filed a petition, showing that the company owed sums approximating $25,000, including payroll due laborers, and that there were no funds immediately available, and stated that it would be to the interest of all parties to

sell the property, after giving the usual notice, and asked for an order of sale of said property.

The receiver also filed a statement showing a number of cars of coal of the total value of $11,518.94, showing also that a number of the cars had been assigned to the First National Bank, and that, when the cars were sold, the proceeds should be applied to the payment of moneys advanced by the plaintiff. The itemized statement filed by the receiver of the assets and property of the coal company showed an estimated value of $89,450, and to this there was added the stationery, supplies and office fixtures, the value of which was estimated at $500, making a total of the estimated value of the property of $89,955. It is alleged that the statement of the estimated value does not include 19 cars of coal, amounting to $11,518.94, which had been assigned to the appellant bank.

The property was ordered sold, as prayed for by the receiver, and was sold to R. D. Dunlap, as trustee, for $5,500, this being the only bid. R. D. Dunlap was president of the appellant bank.

Thereafter the receiver filed his report, and exceptions were filed to said report, were heard by the court and overruled, and the report of the receiver was approved by the court.

The court found the amount of indebtedness due the appellant and interveners, and held that the laborers intervening were entitled to a first lien on the property. The cost of the receivership amounted to approximately $8,000, as shown by the receiver's report. The court decreed that this should be paid by the First National Bank of Clarksville, the appellant herein.

As far as necessary to do so, attention will be called to the facts in the opinion, and it is unnecessary to set them out further here.

It is contended by the appellant that it should not be required to pay the costs and expenses of receivership, and it quotes § 1838 of Crawford & Moses' Digest in support of that contention. That section reads as fol-

lows: "When a suit is brought in the name of one person to the use of another, the person to whose use the suit is brought shall be liable for the payment of all costs which the plaintiff may be adjudged to pay." And it is contended that the suit in the instant case was commenced by the First National Bank, who held a second mortgage, and sought to foreclose, subject to the prior rights of the American Bank & Trust Company and all other claimants whose rights upon intervention might be made to appear as prior to the rights of the First National Bank. Appellant states that the suit was brought not only in the interest of the bank, but in the interest and for the use of all creditors and claimants who might desire to intervene, and all other claimants did intervene.

It may be said in answer to this contention that the suit was not brought by appellant in its name to the use of another. The suit was brought by appellant for its own use, to collect its own debts, and the section of the Digest above quoted has no application to a suit of this kind.

Appellant argues that the question of costs seems not to have been considered, the court taking the view that the liability of the bank for the excess costs had been conceded. But it says this attitude on the part of the counsel was due solely to the fact that the counsel who represented the bank in the last stages of the receivership had the impression that the counsel had not contested this feature.

The appellant correctly argues that giving costs in equity is within the discretion of the chancellor, and cites *Mt. Nebo Anthracite Co.* v. *Martin,* 86 Ark. 608, 111 S. W. 1002, 112 S. W. 802, and *Lackey* v. *Waterworks,* 80 Ark. 108, 96 S. W. 622. Many other cases decided by this court might be cited. There is, however, no dispute about this proposition of law. A court of equity may, in proper cases, apportion the costs, although in law cases the losing party must pay the costs.

Attention is next called by appellant to the rule as stated in 34 Cyc. 366. It quotes from this at length, but the latter part of the quotation is as follows:

"So the general rule that such expenses are to be taken out of the fund or property in the receiver's hands, is held not to contemplate that they shall be taxed as costs or charged against the party at whose instance the receiver was appointed, merely because he was ultimately unsuccessful on the merits of his suit, and when the validity or propriety of the appointment itself is not attacked."

Appellant also calls attention to the case of *Ferguson* v. *Dent,* 46 Fed. 88; *Farmers' Loan Co.* v. *Pacific Railroad Co.,* 31 Ore. 237, 48 P. 706, 38 L. R. A. 424, 63 Am. St. Rep. 822, and cases cited there. Also *Atlantic Trust Co.* v. *Chapman,* 208 U. S. 360, 28 S. Ct. 406, 52 Law ed. 528. And appellant cites and quotes from other cases relied on to support its contention.

The court in its decree stated: "As to the cost of the receivership, amounting approximately to $8,000, as shown by the report of J. W. Houston, the receiver herein, the attorneys for the plaintiff concede that all over and above the amount received from the sale of the property should be paid by the plaintiff, the First National Bank of Clarksville, Arkansas."

Whether the text quoted in appellant's original brief is supported by the cases cited or not is, we think, immaterial, because it is conceded by appellant now that the giving costs in equity is within the discretion of the chancellor. And, without deciding the question as to whether, in all cases where the property sold is not sufficient to pay the costs, the person procuring the appointment of the receiver should pay it, we think that the chancellor's ruling as to costs in this case is correct. The estimated value of the property was more than $89,000. This was purchased by the bank, or by its president as trustee, for $5,500, and this $5,500 for which the property sold is to be used in the payment of the costs, and the appellant required to pay the balance. So it will be seen

that the proceeds of the property itself pay $5,500 of the costs, and the appellant has all the property, and the court in its decree stated, "and it is considered, adjudged and decreed that the plaintiff, First National Bank of Clarksville, pay the amount of all costs in excess of the sum of $5,500, the sale price of the property sold by the receiver, and that it be allowed to retain said sum of $5,500, the purchase price of said property, as part payment of the costs of the receivership, as the same appears from the report of the receiver this day approved."

The court trying the case knew all the facts and circumstances, and evidently adjudged the costs as it thought proper. Moreover, there was no denial of the fact that it was conceded by the attorneys that it was proper in this case for the person who brought the suit and obtained the appointment of the receiver to pay whatever costs there was in excess of the value of the property.

This court has many times held that the chancellor might, in the exercise of a sound discretion, apportion the costs according to equitable principles; that equity will apportion the costs according to what the court regards as the applicable equitable principle. The court evidently did that in this case.

This court, discussing the rule as to costs in chancery cases, said:

"Learned counsel for appellee have cited numerous authorities in support of the position that costs are not necessarily adjudged against the losing party in chancery cases, but that the chancellor may, in the exercise of a sound discretion, apportion the costs according to equitable principles when the facts justify. The rule contended for is sound, but is only applied when equities between the various parties warrant it. For example, if one party is at fault more than another, it is proper to distribute the costs according to the fault of each; or, if equally at fault, to divide the costs; or to adjudge the entire costs against the party wholly at fault." *Fry* v. *White,* 132 Ark. 608, 201 S. W. 1105; *Paving District No.*

5 *City of Ft. Smith* v. *Fernandez,* 144 Ark. 550, 223 S. W. 24; *Hayes* v. *Bankers' & Planters' Life Association of Ft. Smith,* 164 Ark. 202, 261 S. W. 296.

This court has also held that § 1833 of Crawford & Moses' Digest, referred to by appellant, does not apply to equity cases, but that in equity cases the taxing of costs and expenses of a suit is entirely discretionary. *Jones* v. *Adkins,* 170 Ark. 298, 280 S. W. 389.

The appellant in its brief states: "The Colorado court has gone so far as to say that when the appointment is improper, if the fund seized is inadequate, the plaintiff who secures the appointment of a receiver, and not the defendant whose property is wrongfully taken from him, is liable for the legitimate expenses of such receivership. Many authorities are cited for the foregoing statement of the law. Among them is that of Judge Taft, in *Mercantile T. Co.* v. *Kanawha,* 58 Fed. 6; *Bank* v. *Central C. & C. Co.,* 115 Fed. 878, 879; *Tome* v. *King,* 64 Md. 166, 184, 21 Atl. 279; *Knickerbocker* v. *McKinley, etc.,* 67 Ill. App. 295; *Ephraim* v. *Pacific Bank,* 129 Cal. 589, 592, 62 Pac. 177; *Welch* v. *Renshaw,* 14 Colo. App. 526, 59 Pac. Rep. 967; *Hendrie* v. *Parry,* 37 Colo. 365, 86 Pac. 113, and cases cited."

But, whether the principles announced in cases cited by appellant entirely support the text or not, is immaterial here, because, under our decisions, the taxing of the costs was within the discretion of the chancery court, and in the instant case there was no abuse of discretion. We think it properly taxed the costs.

It is next contended that the lienholders were not entitled to a lien, because they had not complied with the requirements of the statute. They filed their intervention in the receivership case, claiming liens, and the appellant itself stated in its complaint that the laborers unpaid for their labor aggregated about 70 in number, and that some of them had begun suit and already attached the machinery and equipment, and that others of said laborers would sue and would greatly harass and obstruct the operations of the plant unless a receiver was

appointed. Mr. Dunlap, president of appellant bank, stated that he made these statements; that Mr. Patterson was his lawyer, and he talked it over with him, and that he swore to these statements.

When the appellant took the cars of coal in controversy it knew, according to its own statements, that the laborers had liens for unpaid labor. It knew that the only possible way in which the laborers could be paid was from the proceeds of this property which it took and sold. It therefore took the property and sold it with a knowledge that it was subject to a laborer's lien, and therefore, in the contest in chancery court, the court properly decided that these liens were superior to the lien of the bank. And we think the contention therefore that the interveners, Pete Barto and his associates, failed to make out their claim of a lien on the cars of coal is without merit. Moreover, on the 18th day of March the court entered a decree which, among other things, stated that it was agreed by and between the attorneys for the interveners and the defendant that the intervener, T. H. McCann, is entitled to a judgment for $180.32 for labor performed. And it was further agreed that said intervener had a lien on the coal produced out of said mine, and also on mine machinery, tools, implements, etc. The court further said: "But the question of priority of lien as between the intervener and other creditors of the defendant Scranton Coal Company is reserved for further consideration."

The attorneys then signed this agreement: "It is hereby agreed between attorneys for intervener and defendant that the above shall be recorded upon the judgment record of the chancery court as a precedent in this case." Signed by the attorneys for the intervener and attorneys for defendant; but the attorney for the defendant was also the attorney for the appellant, and there does not seem to be any controversy about these laborers being entitled to enforce their liens in the manner in which they did when the amounts were fixed by the court. In the first place, it was not necessary in a proceeding

of this sort, where property had been taken and sold by the appellant, to do more than file an intervention, as the laborers did in this case. But, even if it had been necessary to comply with all the statutes, we think the record shows conclusively that this requirement was waived, and that the laborers are entitled to their liens as found by the chancellor.

The chancellor found that as to a number of cars there was no evidence of the value at all, and necessarily found against the interveners, or rather declined to find against the appellant, as to these cars. The interveners contend that they were entitled to judgment for the value of these cars.

We are of opinion that the chancellor was correct; that there was no evidence as to the value of these cars, and the burden was upon the parties claiming a lien to show the value of the property converted by appellant. Having failed to do this, they were not entitled to any judgment for the value of these cars.

The decree of the chancery court will therefore be affirmed, both on appeal and cross-appeal. It is so ordered.