4-5559                                    131 S. W. 2d 1

Opinion delivered July 10, 1939.

*Jas. G. Coston* and *J. T. Coston,* for appellant.

*A. F. Barham, Bruce Ivy* and *Myron T. Nailling,* for appellee.

MEHAFFY, J.    On May 20, 1932, the appellee, D. M. Moore, executed to Moses Sliman three promissory notes all dated May 20, 1932, and payable as follows: $5,000 six months after date; $5,000 one year after date; $7,500 eighteen months after date.

D. M. Moore and his wife, Susan Moore, executed and delivered a deed of trust to certain real estate in Osceola to secure the payment of said notes. These notes and deed of trust were executed and delivered about four months before Moore's creditors filed petitions in the bankruptcy court and Moore was adjudged a bankrupt. He was insolvent at the time the notes and deed of trust were made, and it is admitted that there was no consideration for the notes or deed of trust. Moore did not owe Sliman anything and received nothing from him when the notes and deed of trust were executed.

Moore and Sliman are both Assyrians and are related, and Sliman was simply assisting Moore to defraud his creditors. The notes had been marked "paid" by Sliman and he admitted his signature and admitted that the notes had been marked "paid" and delivered to Moore, but he said that Moore forced him to mark the notes "paid" and sign them; that Moore threatened him and told him that if he did not mark them "paid" he would have him indicted and sent to Atlanta.

The deed of trust contained a power of sale authorizing the grantee to sell the property described in the deed of trust at public sale, public notice of time and place of sale having been given for twenty days by advertising in some newspaper published in said county, or by notices posted in two public places in the county, and it authorized the grantee to convey said property to anyone purchasing at said sale and to convey absolute title thereto.

On April 29, 1938, the trustee published a notice that he would, on May 20, 1938, sell said property, describing it, for the purpose of paying the note, principal and interest.

After the publication of said notice of sale, on May 12, 1938, appellee Moore filed his complaint in the Mississippi chancery court against the appellant Sliman and the trustee, alleging that the notes and deed of trust were without consideration and that appellees received no consideration whatever for said notes and that Moses Sliman paid appellees nothing whatever, and that appel-

lee Moore was not, at the time of the execution of said notes, and is not now, indebted to Moses Sliman; that said notes had been marked "paid" by appellant Sliman; that notices had been published of the sale of said property; that said deed of trust constituted a cloud upon the title of appellees, and that they were entitled to have the same canceled; that unless J. W. Spann, trustee, is restrained, he would on May 20, 1938, proceed to sell said land, thereby creating a further and additional cloud on the title and working further, greater, and more irreparable injury. They prayed that the trustee, Spann, be enjoined; that said deed of trust be canceled, and the restraining order be made perpetual.

The appellant, Moses Sliman, filed answer in which he denied each and every allegation in the complaint. Thereafter the Jefferson Standard Life Insurance Company filed an intervention claiming a superior lien on said property, and the Florida Real Estate Loan Company filed an intervention and cross-complaint.

The suit to cancel the deed of trust and restrain the trustee from selling the property was based entirely on want of consideration. There was no suggestion about a fraudulent conveyance. The answer denied the allegations of the complaint, and there was no suggestion of fraud in the answer.

On February 20, 1939, a decree was entered by the chancery court holding that there was no consideration for the execution of said notes and deed of trust; that at the time the instruments were executed the appellees were not indebted to the appellant, Moses Sliman, or to J. W. Spann, trustee, and that appellees received no consideration whatsoever for the execution and delivery of said notes and deed of trust, and that the restraining order should be made perpetual, and the deed of trust canceled.

This appeal is prosecuted by Sliman to reverse said decree.

The appellant Sliman does not claim that there was any consideration for the notes and deed of trust; does not claim that Moore owed him anything at the time or owes him anything now, but bases his right for a reversal

on the maxim that "He who comes into equity, must come with clean hands." The undisputed evidence in this case shows that the notes and deed of trust were executed for the purpose of defrauding the creditors of Moore who was at that time insolvent.

There is some conflict in authority as to the application of this maxim, especially as to the exceptions or circumstances under which the maxim does not apply. In discussing this maxim and its application, this court, said:

"But although this doctrine is of general, it is by no means of universal application. For, besides the admitted and well established exception of that class of cases where the agreement or other transactions are repudiated on account of their being against public policy, (where the relief is said to be given, not to the particeps criminis, but to the public through him, because of the duty of the court to uphold and maintain the laws and prevent their infraction. 1 Story Eq. § 289. Tucker, 2 Lee. 393. 1 Rand. 76,) there are many anomalous cases, not impugning the general principle, but supposed to be placed beyond its influence by the particular circumstances of the case; as where the party has been seduced from the path of rectitude by the allurements of strong circumstances and by these means been made in some sense the slave of another's will; the law, in compassion of the infirmities of his nature, has supposed that he did not enjoy that freedom of will without which he cannot be justly regarded as a moral agent, (*Austin's Adm'x* v. *Winston's Ex'r*, 1 Hen. & Munf. 33, 3 Am. Dec. 583), or where the circumstances were such that the relief granted could be supposed to be, not the actual enforcement of the fraudulent or illegal contract, but simply a suit brought for the recovery of money received by the defendant for the plaintiff though founded upon a transaction originally fraudulent or illegal, as in the case of *Anderson & Tilley* v. *Moncrief*, 3 Desseau 133, where the agent had received a consignment of Africans with instructions to sell them, and, having effected the sale, refused to account and pay over the proceeds on the ground that the act which had brought the money into

his hands was a direct violation of the laws against the slave trade." *Irons v. Reyburn,* 11 Ark. 378.

In the instant case the appellant Sliman does not claim that Moore is indebted to him or that there was any consideration for the notes and deed of trust; and yet he claims the right to sell under the power of sale and deed of trust, and thereby acquire the property, and invokes the maxim above quoted to prohibit Moore from making any defense. The purpose of the maxim is to secure justice and equity, and not to aid one in an effort to acquire property to which he has no right.

In the case of *Loughran v. Loughran, et al.,* 292 U. S. 216, 54 S. Ct. 684, 78 L. Ed. 1219, the United States Supreme Court said: "The suit at bar was brought after termination of the marriage by death to enforce existing property rights growing out of the marriage in Florida and the decree entered in Virginia. It was not brought to enforce any transaction had within the District; nor was it brought to enforce an illegal contract; or to further an illegal relation. Equity does not demand that its suitors shall have led blameless lives. Neither the doctrine of clean hands, nor any kindred principles on which courts refuse relief, is applicable here."

In the case of *Chesser v. Chesser,* 67 Fla. 6, 64 So. 357, the court said: "It is contended by the appellee that this cannot avail the appellant by reason of the fact that he executed the note and mortgage for the purpose of defrauding his creditors. To this contention we cannot agree. As was held in *Wearse v. Pierce,* 24 Pick. (Mass.) 141: " 'In an action brought by the administrator of a mortgagee against the mortgagor to recover possession of land mortgaged to secure the payment of a promissory note, it is a good defense that the note was given without consideration; and the demandant cannot rebut such defense, either by direct evidence showing that the note was also given with a view to defraud the creditors of the mortgagor, or by arguing to the jury, from other evidence in the case, that it was so given.' "

The maxim: "He who comes into equity must come with clean hands" means no more than that he who has defrauded his adversary to his injury in the subject matter of the action, will not be heard to assert a right in equity. While courts will not, as a rule, measure equity between wrongdoers, they are quite as careful to deny to any man the advantage of his own wrong. *Langley* v. *Delvin,* 95 Wash. 171, 163 Pac. 395, 4 A. L. R. 32.

In the case of *Anderson* v. *Lee, et al.,* 73 Minn. 397, 76 N. W. 24, the court held that the mortgagor was entitled to show that the mortgage was given without consideration although it was made for the purpose of defrauding creditors. The court said in that case: "It is always competent, in defense of an action or proceeding to foreclose a mortgage, or in an action to restrain such foreclosure and to have the apparent lien of the mortgage canceled, to show that there is nothing due on the mortgage because there was no consideration for the note or obligation it purports to secure. *Devlin* v. *Quigg,* 44 Minn. 534, 47 N. W. 258, 10 L. R. A. 665, 20 Am. St. Rep. 592; *Wearse* v. *Peirce,* 24 Pick. 141; 1 Jones, Mortg. § 613."

The maxim may not be invoked by one himself guilty of fraud, as that would be to violate the clean hands principle. Lawrence on Equity Jurisprudence, Vol. 2, § 1091.

In the instant case appellant Sliman admits that both he and Moore were parties to the fraud and this is a suit to prevent him from profiting by the fraudulent transaction, and he seeks to avoid the injunction and the cancellation of the deed of trust by showing that it was made to defraud creditors and that he himself participated in the fraud.

The maxim was not intended to and does not protect persons who themselves are guilty of fraud.

Again, the mortgage could not be either foreclosed or the property sold under the power of sale, if there was no debt, and the notes had been marked "paid" and signed by Sliman. It is true he says he was forced to do this because he was afraid he would be prosecuted for

some crime which he says he did not commit; but under the circumstances and evidence in this case the chancery court was justified in finding that there was no debt.

The decree of the chancery court is affirmed.

Mr. Justice BAKER disqualified and not participating.