WHITE *v.* AVERY.

5-1173                                     302 S. W. 2d 88

Opinion delivered May 6, 1957.

[Rehearing denied June 10, 1957]

*Melvin E. Mayfield* and *Surrey E. Gilliam,* for appellant.

*G. E. Snuggs,* for appellee.

PAUL WARD, Associate Justice. On January 13, 1941 Robert Avery and his wife Will (often referred to as Willie) Avery, executed a regular quitclaim deed, conveying 120 acres in Union County, Arkansas, to G. E. Van Hook, administrator of the estate of Joe White. The consideration recited in the deed was $10. Immediately after the execution of said deed appellants took possession of said property (with the exception hereafter mentioned) and have remained in possession of and paid taxes on said lands until the present time. At the time the deed was executed Robert Avery and Willie Avery, his wife, were living in a small house located on said lands and continued to do so until Robert Avery died the following year and Willie has continued to live there until this time.

On September 26, 1952, some eleven years after the above mentioned deed was executed and delivered to the said grantee, Willie Avery (widow of said Robert Avery) and the children of Robert and Willie Avery filed a complaint against the heirs of Joe White, deceased, and the administrator of his estate. In this complaint it was alleged in substance: That the recited consideration was never paid; that although Robert and Willie Avery were or had been indebted to the estate of the said Joe White deceased yet the lien securing that indebtedness was barred by the statute of limitation and also the said administrator agreed to sell the mineral rights on and under said lands to pay said indebtedness; That when this was done he would deed the lands back to the grantors, that it was with this understanding that the deed had been executed and delivered, and; That the said administrator has sold timber, oil and gas leases for which no accounting has been made. The prayer was that the said deed be cancelled as a cloud on plaintiffs' title, and that an accounting be made, and any indebtedness due the administrator be paid.

Answering the above complaint the administrator and the heirs of Joe White entered a general denial to all material allegations; they admitted they had sold a small amount of timber from the lands and that they

had executed an oil and gas lease thereon but deny that the plaintiffs were entitled to any accounting or any of the proceeds; they claim title by virtue of the deed described above and by virtue of seven years adverse possession and payment of taxes.

Upon the issues above joined both sides introduced testimony together with exhibits. Based thereon the trial court, on February 21, 1956 found that the plaintiffs' complaint should be dismissed for the want of equity and that a life estate should be vested in the plaintiff, Willie Avery, and, subject thereto, that title to the 120 acres of land be quieted and confirmed in the defendants. The court adjudged that the plaintiffs should pay two-thirds of the costs and that the defendant should pay one-third thereof.

On direct appeal the heirs of Joe White deceased and the administrator of his estate contend that the trial court was in error in decreeing a life estate in said lands to Willie Avery. On cross-appeal Willie Avery and the heirs of Robert Avery deceased contend that the court committed error in refusing to cancel the deed and to order an accounting.

We agree with appellants that it was error for the trial court to decree a life estate to Willie Avery. In the first place there is no contention on the part of Willie Avery or any of the heirs of Robert Avery that she was to have a life estate in said lands. Their contention was that the deed should be cancelled and the fee simple title vested in them. The allegations of the complaint filed by appellees amount, in substance, to a charge that they were induced by fraud to execute the deed.

It would serve no useful purpose to set forth and comment on the voluminous testimony contained in the record, but it suffices to say that there is no testimony from which the chancellor could have found that Willie Avery was to retain a life estate when she and her husband executed the quitclaim deed to the administrator of Joe White's estate. The testimony shows that Robert Avery and Willie Avery were indebted to the White estate in the sum of approximately $1,700 and that

this amount was a consideration for the execution of the deed in question. The trial court could not have dismissed appellees' complaint without having first found, as it did, that no fraud or misrepresentation was practiced upon Robert Avery and his wife in connection with the execution of the deed to the administrator, and we cannot say that the court's finding was against the weight of the testimony.

However the administrator G. E. Van Hook, and he alone did testify that at the time of the execution of the said deed he told Robert Avery and his wife that they could live in the small house situated on said lands as long as they lived. This assurance of the privilege of living in the house does not amount to the granting of a life estate in the 120 acres of land involved. It is not denied that appellants had possession of the lands, sold timber, executed oil and gas leases and paid the taxes for more than eleven years. All of which is inconsistent with the life estate in Robert and Willie Avery. See 33 Am. Jur. 820, § 313 where, among other things, it is said:

"A life tenant of real estate is entitled to the issues and profits of the property during the period of the life estate. A life tenant of realty, for example, is usually entitled, under the doctrine of emblements, to the crops sown on the land, and if he dies before maturity of such crops thus sown, they go to his personal representative. He may be entitled to certain mineral rights, or the use or income of money received from their disposition, under particular fact situations, and also, under some circumstances, is entitled to the proceeds derived from the sale of timber."

While appellee, Willie Avery, is not entitled to a life estate in all of the property involved in this case yet it is just and right, and not against the wishes of appellants apparently, that she should be accorded the right to live in the house and to use so much of the ground adjacent thereto as is reasonably necessary for domestic purposes, during her lifetime.

What we have already said heretofore leads to the obvious conclusion that appellees cannot prevail on their cross complaint. As indicated above the chancellor found that appellees had not established the allegations in their complaint, and after a careful examination of the record we cannot say that the chancellor's finding was against the weight of the testimony.

We cannot agree with appellees that appellants withdrew or failed to file an answer in this case. Appellees' contention is based on this situation. On October 8, 1952 the several defendants filed a full and complete answer to which we have previously referred. Later certain of the defendants filed what is designated as "Amended and Substituted Answer." This document consisted of only one page and refers to the fact that one of the named defendants was dead at the time the suit was filed and that two of them had already disposed of their interest in the lands, etc. It is appellees' contention, citing authorities, that the Amended and Substituted Answer took the place of the original answer. To take advantage of this fact appellees, on February 21, 1956, filed a "Motion for Summary Judgment" setting forth the facts and contentions referred to above. This motion was overruled on the same day that it was filed. We think the court was justified in overruling appellees' motion and in refusing to strike appellants' original answer for the reason that on the same day appellants filed a motion to amend the title designation of their second pleading mentioned above on the ground that it was the result of an error. The record shows that this motion was granted by the court.

We have considered and rejected appellants' contention that the trial court should not have required them to pay one-third of the costs. This was a matter which addressed itself to the discretion of the trial court, and an abuse of discretion does not appear.

It follows from what we have said that this cause is and should be affirmed on cross-appeal, and that, on direct appeal, it is reversed with directions to the trial court to enter a decree in conformity with this opinion.