Gearldine **LOCKHART**,
et al., Respondent,

v.

Kenneth G. **MIDDLETON**, Appellant.

No. WD 46788.

Missouri Court of Appeals,
Western District.

Aug. 24, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1993.

Application to Transfer Denied
Nov. 23, 1993.

Kenneth G. Middleton, pro se.

Samuel S. Zollicker, Cochran, Oswald, McDonald, Graham & Roam, P.C., Blue Springs, for respondent.

Before ULRICH, P.J., and BERREY and SMART, JJ.

SMART, Judge.

Kenneth G. Middleton appeals from the order of the trial court denying his motion to set aside a judgment entered against him in a wrongful death action. Middleton's wife,

Katherine Middleton, was killed by a gunshot wound. Middleton was convicted of the murder and Katherine's siblings brought a wrongful death action against Middleton. After trial, a verdict was entered in favor of plaintiffs in the amount of $1,350,000.00. The trial court denied Middleton's motion to set aside the judgment, and he appeals.

Judgment is affirmed.

Katherine Middleton died of a single gunshot wound to the head on February 12, 1990. This occurred at the Middleton's home. On July 19, 1990, Katherine's siblings brought a wrongful death action against defendant alleging that defendant had willfully and intentionally fired the shot that caused the death of Katherine Middleton.

Defendant was served with the summons on September 26, 1990. Defendant's counsel filed a general denial answer on October 2, 1990. The case was originally docketed for the week of June 24, 1991. On June 18, 1991, defendant filed an application for continuance. That motion set forth that defendant was an inmate in the Missouri Department of Corrections and that counsel for defendant was scheduled to be in court on another criminal matter during defendant's trial date. The request was granted by the trial court and the case was rescheduled for the week of December 12, 1991. At the docket call, the trial judge set the trial date for the week of May 26, 1992.

On April 14, 1992, defendant again filed a motion for a continuance. This motion set forth that defendant had been convicted of the first degree murder of his wife and was sentenced to life without parole in the Missouri Department of Corrections. The motion further stated that an appeal was pending from that conviction. Defendant was concerned that evidence of the criminal conviction would be presented to the jury and that his rights would be prejudiced if the conviction were later reversed on appeal.[1] Defendant also filed a motion in limine seeking a pre-trial order directing the plaintiffs not to argue or offer in evidence the fact that defendant had been convicted and sentenced for the murder of his wife. This motion was

never ruled upon. The trial court originally granted the motion for continuance, continuing the case to the March 1993 docket. On April 20, 1992, plaintiffs filed suggestions in opposition to the continuance claiming that their interests would be prejudiced by the continuance because defendant had been disposing of his assets. The court then denied the continuance on May 21, 1991.

On May 18, 1992, defendant filed an application for a writ of habeas corpus ad testificandum, which was denied by the trial court. On May 21, 1992, the defendant forwarded to the court a notice advising that he was terminating the services of his counsel and that he intended to represent himself *pro se*.

On May 26, 1992, plaintiffs appeared for the scheduled trial and presented evidence. No representative of Defendant Middleton appeared on his behalf. The court entered judgment for plaintiffs for $1,350,000.00. On June 15, 1992, defendant filed a motion to set aside the judgment. The court denied the motion and defendant now appeals from the trial court's order.

*Denial of Motion to Set Aside Judgment*

Defendant first contends on appeal that the trial court erred in denying his motion to set aside the judgment entered against him in the wrongful death action because the ruling violated Rule 74.05(c) in that he showed good cause and a meritorious defense for failing to appear at trial.

 The courts of this state have held that circumstances similar to those presented in this case do not involve a "default" judgment. *See, e.g., Taylor v. Taylor*, 742 S.W.2d 630, 632 (Mo.App.1988); *Brooks v. Brooks*, 800 S.W.2d 468, 470 (Mo.App.1990). These cases have held that when a defendant files an answer in a case and then does not appear at trial, the judgment is not a default judgment. In such circumstances, the party should seek to have the judgment set aside under Rule 74.06. Thus, we address defendant's claim in accordance with Rule 74.06. The trial court has the discretion to set aside a default judgment and its decision will not be interfered with unless an abuse of discre-

---

1. Defendant's conviction was subsequently af- firmed by this court on appeal.

tion is found. *Bell v. Bell,* 849 S.W.2d 194, 197 (Mo.App.1993).

■ Defendant claimed that he failed to appear at his trial because he was incarcerated, unable to obtain a writ of habeas corpus and testificandum, and no longer had counsel to represent his interests at trial. Defendant requested and received one continuance. After having an additional ten months to prepare for the trial, defendant again requested a continuance. The trial court initially granted defendant's motion and then after considering plaintiffs suggestions in opposition to the motion, which indicated that defendant was disposing of his assets, the trial judge changed his ruling to a denial of the request. Less than one week before trial, defendant discharged his attorney. Defendant has not offered this court any explanation or justification for the discharge. Defendant declined the opportunity to present testimony by videotape deposition. Also, defendant's motion for habeas corpus ad testificandum was filed less than one week before the scheduled trial.

Defendant argues that the denial of this writ deprived him of his constitutionally guaranteed right of access to the courts and justifies his failure to appear. Defendant points to the fact that on May 26, 1992, he was no longer represented by counsel and was unable to be present at trial because he was confined by the Missouri Department of Corrections. Defendant fails to note, however, that it is well established that an inmate of a correctional facility does not have a constitutional right to appear as a party in a civil action. Section 491.230, RSMo Supp. 1992 provides:

**Power to issue writ of habeas corpus—persons detained in correctional facility shall not attend civil proceeding—exception—conditions.—1.** Courts of record, and any judge or justice thereof, shall have power, upon the application of any party to a criminal suit or proceeding, pending in any court of record, to issue a writ of habeas corpus for the purpose of bringing before such court any person who may be detained in jail or prison, within the state, for any cause, to be examined as a witness in such suit or proceeding, on behalf of the applicant.

2. No person detained in a correctional facility of the department of corrections shall appear and attend or be caused to appear and attend any civil proceeding, regardless of whether he is a party, except in those instances in which the offender is a respondent in a chapter 211 proceeding to terminate parental rights....

*See also In re Marriage of Burnside,* 777 S.W.2d 660 (Mo.App.1989) (where the court stated that a prison inmate who was a party in a divorce action had no absolute right to appear personally).

Defendant acknowledges that he could have presented his testimony through a video deposition. Defendant suggests that the difficulty with a deposition is that it would have revealed to the jury that defendant was in the penitentiary. Further, it would not have allowed rebuttal of any testimony that was given by plaintiffs. Although defendant's observations concerning the weaknesses of relying on a deposition are well taken, they do not show that the trial court committed error in denying the writ. Accordingly, defendant did not establish a showing of "excusable neglect" under Rule 74.06(b).

Even if defendant's contentions are analyzed under Rule 74.05(c), defendant does not prevail, since defendant failed to show good cause for his non-appearance, and failed to state facts showing a meritorious defense to the action.[2] Defendant's Point I is denied.

**2.** Defendant stated only the conclusion that the shooting was accidental. He did not state *facts* which could constitute a meritorious defense.

Defendant apparently would not now be able to show a "meritorious defense" because the issue of defendant's criminal misconduct in shooting his wife has already been adjudicated in defendant's criminal trial, in which the jury found defendant intentionally killed his wife.

We assume that defendant would be collaterally estopped from relitigating this issue in the wrongful death action. *See Economy Fire & Casualty Co. v. Haste,* 824 S.W.2d 41 (Mo.App. 1991); *State v. Daniels,* 789 S.W.2d 243 (Mo. App.1990); *Johnson v. Raban,* 702 S.W.2d 134 (Mo.App.1985); *Webb v. Voirol,* 773 F.2d 208 (8th Cir.1985).

*Appointment of a Trustee*

■ Next, defendant contends that the trial court abused its discretion in refusing to set aside the judgment since it was entered without the appointment of a trustee. Prior to 1990, Chapter 460 provided a means for appointing a trustee to manage the estate of any person imprisoned in a penitentiary. *See* § 460.010, RSMo 1986. In fact, that statute was construed to require the appointment of a trustee in order to obtain a valid judgment on a suit which attacks the property of a convict. *See American Family Mut. Ins. Co. v. Mason,* 702 S.W.2d 848 (Mo.App. 1985). In 1990, Chapter 460 was repealed with the exception of § 460.100, authorizing a trustee to sue and be sued on behalf of an inmate, and § 460.250, allowing the trustee to receive reasonable compensation. After the changes to the statute were made, the court in *Berdella v. Pender,* 821 S.W.2d 846, 850–51 (Mo.banc 1991), while discussing the statute, stated that Chapter 460 allows an inmate to request appointment of a trustee but that it does not require that a trustee be appointed automatically upon incarceration. It stated that the purpose of Chapter 460 is "to protect creditors, and other 'interested persons,' from the potential squandering of an inmate's estate while the inmate was incarcerated." *Id.* at 850.

Defendant had two years while this case was pending to request the appointment of a trustee. However, defendant never made such a request. Thus, defendant cannot be heard to complain now. Point II is denied.

Judgment is affirmed.

All concur.