Kenneth G. MIDDLETON, and Lynn Carl Middleton
*v.* Geraldine LOCKHART, Mildred M. Anderson,
Joyce M. Henson, and Jessie J. Brewer

99-1331                                           43 S.W.3d 113

Supreme Court of Arkansas
Opinion delivered April 26, 2001
[Petition for rehearing (Lynn Carl Middleton) denied
June 7, 2001; petition for rehearing (Kenneth G. Middleton)
denied June 21, 2001.]

*Appellant,* pro se.

*Martin Law Firm, P.A.,* by: *Thomas A. Martin,* for appellants.

*Davis & Goldie,* by: *Steven B. Davis,* for appellees.

JIM HANNAH, Justice. This appeal arises from an action under the Fraudulent Conveyance Act and an attempt to execute on a judgment appellees received in Missouri against appellant Kenneth G. Middleton for the murder of his wife, Katherine Middleton. The action in Arkansas was begun here before the judgment was obtained in Missouri in an apparent attempt to preserve the Arkansas assets until the judgment was obtained. Appellants filed several motions to dismiss under Ark. R. Civ. P. 12. The trial court granted two motions to dismiss under Ark. R. Civ. P. 12(b). The complaint was amended several times, and the case reached trial on March 25, 1999. Appellants allege the trial court erred in failing to dismiss under Ark. R. Civ. P. 41(b) when they prevailed under two successive motions to dismiss under Ark. R. Civ. P. 12(b)(6). Appellants also allege res judicata barred the trial of this matter because certain issues decided at trial had already been decided against plaintiffs in the Rule 12 motions. Appellants additionally assert error in finding Kenneth abandoned his homestead right when he murdered his wife. Finally, appellants assert it was error to tax Kenneth's attorney's fees as costs against Kenneth and his brother,

Lynn Carl Middleton. The issue as to taxing Kenneth's attorney's fees as cost against Kenneth and Lynn is reversed and remanded to the trial court for further consideration of costs consistent with this opinion. The case is affirmed in all other respects.

*Facts*

On February 22, 1991, Kenneth G. Middleton was convicted of the first-degree murder of his wife, Katherine, and sentenced to life without parole for the murder plus 200 years for armed criminal action. On February 27, 1991, Kenneth entered into a contract to convey a tract of land known as the Middleton homeplace to Lynn Carl Middleton, Kenneth's brother. On March 7, 1991, a warranty deed conveying the land was filed. Additional transactions around this same time make it clear Kenneth was liquidating his assets. On March 11, 1991, Kenneth sold his cattle for $19,000. On March 26, 1991, Kenneth conveyed 265 acres of land to Rocky Lee McCutcheon and Sheila Marie McCutcheon.

Prior to these transfers, Kenneth had been sued on July 19, 1990, by Katherine's siblings in a wrongful-death action. Trial of the wrongful-death action in Missouri was set for May 26, 1992. On the day of trial, no one appeared on behalf of Kenneth, which resulted in a judgment against him for $1,350,000. *Lockhart v. Middleton*, 863 S.W.2d 367 (Mo. Ct. App. 1993).

The trial court concluded there was ample evidence Kenneth transferred or conveyed all or substantially all of his assets as of early 1991, and that due to Kenneth's refusal to comply with discovery, the record did not reflect what, if any, assets he might have retained. The court then considered the transfers and found the conveyance of the 265 acres was for a reasonably equivalent value. Thus no claim of resulting insolvency could be made as to this transfer. However, the trial court found that the Middleton homeplace was not transferred for a reasonably equivalent value. The trial court then found Kenneth abandoned any homestead right he claimed when he murdered his wife and ordered the Middleton homeplace sold at execution sale.

Both Kenneth and his brother, Lynn, raise an asserted marriage-homestead exemption of Kenneth and Katherine as a defense to execution on the Middleton homeplace. Kenneth and Katherine were married in April of 1974. At that time, Kenneth already owned the tract of land referred to as the Middleton homeplace,

which is located in Newton County. When the land was conveyed to him in 1973, he noted on the deed that he would offer the land to a brother or sister before it would be sold to anyone else. This deed also contains a provision reserving the right to live in the house to Oshia Middleton for the remainder of her life. The land was in Kenneth's name and remained so until Kenneth transferred it shortly after his conviction. During the marriage, a 1,663 square foot home and a 2,800 square foot metal building were erected on the Middleton homeplace. In considering the claim of a homestead exemption, the trial court found a lack of evidence to show an exemption based upon head of household, and found there was conflicting evidence on whether the exemption might be based on marriage. The trial court concluded that whatever interest Kenneth had in the Middleton homeplace as a result of his marriage, he abandoned it when he terminated his marriage by the murder of his wife.

The trial court awarded Kenneth's attorney a reasonable attorney's fee pursuant to Ark. Code Ann. § 16-61-109 (1987) in the sum of $14,996.93, to be paid by appellees, and taxed the attorney's fees as cost to Kenneth and Lynn.

### Standard of Review

■■ We review chancery cases de novo on the record, but we do not reverse a finding of fact by the trial court unless it is clearly erroneous. *Simmons First Bank v. Bob Callahan Servs., Inc.*, 340 Ark. 692, 13 S.W.3d 570 (2000); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Similarly, we review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Simmons First Bank, supra; Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). In this regard, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.; Stephens v. Arkansas School For The Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000); *Buchbinder v. Bank of America*, 342 Ark. 632, 30 S.W.3d 707 (2000).

## Res Judicata and Arkansas Rule of Civil Procedure 41(b)

Appellants assert that because they prevailed on two motions to dismiss under Ark. R. Civ. P. 12(b)(6), the complaint should have been dismissed under Ark. R. Civ. P. 41(b), and that the trial court was in error when he allowed trial of the matter. Consistent with this assertion, appellants further allege that it was error for the trial court to allow trial on the issues decided in these motions because such consideration was barred by the doctrine of *res judicata*.

### Res Judicata

Under the doctrine of *res judicata* or claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. *Francis v. Francis*, 343 Ark. 104, 31 S.W.3d 841 (2000); *Arkansas Louisiana Gas Co. v. Taylor*, 314 Ark. 62, 858 S.W.2d 88 (1993).

As is evidenced by the orders, amended pleadings, and trial, the dismissals in this case were without prejudice. A dismissal without prejudice is not an adjudication on the merits. *Benedict v. Arbor Acres Farm*, 265 Ark. 574, 579 S.W.2d 605 (1979). *Res judicata* bars relitigation of a subsequent suit when certain elements are met, including a prior judgment on the merits. *National Bank of Commerce v. The Dow Chemical Company*, 338 Ark. 752, 1 S.W.3d 443 (1999). There was no judgment on the merits and, therefore, *res judicata* is not applicable.

A review of the pleadings reveals that the appellees in their complaint were asking for the imposition of a constructive trust upon Kenneth's assets. The amended complaint alleged that Kenneth was attempting to convey his real property for inadequate consideration with the fraudulent intent of depriving the plaintiff of recovery and asked for the imposition of a constructive trust in lieu of a prejudgment attachment. The complaint and amended complaint did not make Lynn a party defendant to this cause of action. On September 16, 1991, the trial judge granted a motion to dismiss under Rule 12(b)(6) and gave the appellee twenty days to plead further to show a property interest upon which a constructive trust might rest.

The appellees filed their second amended complaint, and among other things, made Lynn a party defendant alleging Lynn had actual or constructive possession of personal property belonging to Katherine, and a portion of Katherine's personal property had been sold, transferred, or assigned by defendants subsequent to Katherine's death. The second amended complaint did not allege that Kenneth had conveyed real property to Lynn. The issue of whether Kenneth's transfer of the Middleton homeplace to Lynn was in fraud of creditors under the Fraudulent Conveyance Act was not before the trial court when it considered appellant's second motion to dismiss. The trial court on May 26, 1992, granted a motion to dismiss under Rule 12(b)(6) except that a constructive trust would be placed on the Middleton homeplace and certain personal property. On the same day, May 26, 1992, the appellees received a judgment against Kenneth in their Missouri wrongful-death case.

On June 12, 1992, the appellees filed their third amended complaint alleging Kenneth's transfers of the real property to Lynn and to the McCutcheons were fraudulent conveyances in fraud of creditors under the Fraudulent Conveyance Act and should be set aside. The issue of fraudulent conveyance in fraud of creditors under the Fraudulent Conveyance Act was not considered or adjudicated by the trial court in the two dismissals under Rule 12(b)(6). In fact, a cause of action under the Fraudulent Conveyance Act could not have been brought by the appellees until after the Missouri judgment was entered on May 26, 1992, the same date as the second dismissal. *Res judicata* is not applicable in this case.

*Arkansas Rule of Civil Procedure 41(b)*

Under Rule 41(b), a plaintiff may suffer an involuntary dismissal for failure to comply with the court's orders, the court rules, or for inaction in the case. Such a dismissal is with prejudice where the action has been previously dismissed, whether voluntarily or involuntarily. Appellants allege that because they prevailed on two motions to dismiss under Rule 12(b)(6), then Rule 41(b) requires that the cause of action be dismissed.

Appellants cite *Bakker v. Ralston*, 326 Ark 575, 932 S.W.2d 325 (1996), and *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997), as support for their position. In *Bakker*, there was a voluntary dismissal under Rule 41(a)(1) followed by a refiling of the suit and a dismissal for failure to obtain service under Ark. R. Civ. P. 4(i), and

the court found that Rule 41(b) required the second dismissal to operate as an adjudication on the merits. In *Brown*, there was a voluntary nonsuit under Rule 41(a)(1) followed by a refiling of the suit and dismissal under Rule 12(b)(6), and this court held that the cause of action should be dismissed with prejudice pursuant to *Bakker*.

■ This case has never been dismissed voluntarily or involuntarily under Rule 41. In *Bakker* and *Brown*, the same cause of action was dismissed twice. In this case, the cause of action alleging a fraudulent conveyance in fraud of creditors under the Fraudulent Conveyance Act was not decided by the trial court when it granted the two motions to dismiss under Rule 12(b)(6). In fact, this cause of action could not have been filed until the date of the second dismissal. Thus, *Bakker* and *Brown* are not applicable to this case. Rule 41(b) is not applicable to this case.

*Homestead*

■ Kenneth asserts the Middleton homeplace passed to his brother Lynn free of any claim or lien because of his homestead rights that arose when he married Katherine. It is well established that as to a homestead there are no creditors. *Arkansas S & L Ass'n v. Hayes*, 276 Ark. 582, 637 S.W.2d 592 (1982); *Jones v. Thompson*, 204 Ark. 1085, 166 S.W.2d 1036 (1942). The homestead exemption is created by the Arkansas Constitution, Art. 9, § 3. It is neither an estate nor a vested interest, but rather an exemption from legal process. *Sulcer v. Northwest Nat'l Ins. Co.*, 263 Ark. 583, 566 S.W.2d 397 (1978).

■ ■ Appellees assert no homestead right could have arisen because Kenneth never held any possessory right in the land but rather only that of a remainderman, and such an interest will not support impressment of a homestead right. The assertion of law is correct. If someone holds a life estate, he is the one entitled to the homestead exemption, and the remainderman has no right to an exemption. *Brooks v. Goodwin*, 123 Ark. 607, 186 S.W. 67 (1916). The argument in this case rests upon an alleged life estate of Oshia Middleton in the Middleton homeplace that is alleged to reduce Kenneth's right in the land to that of a remainder. However, the deed states, "Oshia Middleton reserves for herself the exclusive right to use and occupy the residence situated on said land for and during the remainder of her lifetime." Thus, Oshia does not hold a life estate in the land at issue, but rather only in the residence. In

*White v. Avery*, 227 Ark. 819, 822, 302 S.W.2d 88 (1957), this court found the privilege of living in a house does not amount to a grant of a life estate in all the land involved, but rather to the house and so much of the ground adjacent thereto as is reasonably necessary for domestic purposes. Kenneth held title to the remaining land. Therefore we must further consider his claim of a homestead right.

■ The object of homestead laws is the protection of the family from dependence and want. *Harbison v. Vaughan*, 42 Ark. 539, (1884). It is intended to preserve the family home. *Bank of Hoxie v. Graham*, 184 Ark. 1065, 44 S.W.2d 1099 (1932). Further, the law is to be liberally construed in the interest of the family home. *Id.*

■ Any resident of this State of either sex, who is married, or who is the head of a family, is entitled to the homestead exemption under the constitution. *Monroe v. Monroe*, 250 Ark. 434, 465 S.W.2d 347 (1971). Kenneth asserted that his right to a homestead arose from his status as a married man and as head of household. The trial court correctly found there was an insufficient showing Kenneth's illegitimate son lived on the homeplace or that Kenneth actually provided for him as a father and, as such, no right of homestead was found to arise as head of household. The trial court then found the evidence was in dispute as to whether Kenneth acquired a homestead as a result of his marriage, but further found that he abandoned any homestead interest he had when he murdered Katherine.

■ At marriage, Kenneth owned the Middleton homeplace. Pursuant to Art. 9, § 3, of the Arkansas Constitution, as a married man, Kenneth qualified to acquire a homestead in that property. *Adams v. Planter's Prod. Credit Assoc.*, 262 Ark. 734, 561 S.W.2d 80 (1978). For an impressment of the homestead character to arise, however, there also must be sufficient occupancy to establish a homestead. Prior to attachment of a lien or claim there must be actual occupancy, not a mere intention to occupy. *Automotive Supply, Inc. v. Powell*, 269 Ark. 255, 599 S.W.2d 735 (1980). There must be good faith occupancy to actually establish a home. *Chastain v. Arkansas Bank & Trust Co.*, 157 Ark. 423, 249 S.W. 1 (1923).

■ ■ Once the exemption is acquired, continuous occupancy is not required. Temporary removal is not fatal, so long as there is an intent to return. *Monroe, supra.* Further, the legal presumption is that the homestead right continues until it is clearly shown that it has been abandoned. *Vesper v. Woolsey*, 231 Ark. 782, 332 S.W. 2d 602 (1960). Further, once acquired, a homestead right

is not terminated by death of a spouse or departure of children by reaching the age of majority. *Butt v. Walker*, 177 Ark. 371, 6 S.W.2d 301 (1928); *Gray v. Patterson*, 65 Ark. 373, 46 S.W. 730 (1898); *Stanley v. Snyder*, 43 Ark. 432 (1884). Additionally, divorce will not terminate the homestead right in the head of household who continues to occupy the homestead. *Jones, supra.* Homestead laws are to be liberally construed in favor of the exemption. *Rowe v. Gose*, 240 Ark. 722, 401 S.W.2d 745 (1966).

The trial court in this case, however, found the evidence in dispute on whether Kenneth satisfied the requirements to establish his homestead rights, but that if he had such a right, he abandoned it when he murdered his wife. A homestead may be abandoned or forfeited. *Gibson v. Gibson*, 264 Ark. 420, 572 S.W.2d 148 (1978); *Maloney v. McCullough*, 215 Ark. 570, 221 S.W.2d 770 (1949). As the trial court found, if the evidence shows abandonment, the issue of whether the right was established is resolved as well.

The question of what, if any, effect the murder of one spouse by the other in the context of a homestead right arising from marriage has on a homestead has not been considered by this court. This court in *Stanley v. Snyder, supra,* stated, however, "The constitution, which contains our homestead statute, has not in express terms anticipated and provided for every possible phase of the question. It therefore devolves upon the courts to construe and apply the law to new cases as they arise." This is such a case where this court must construe and apply the law to a new situation.

The protection of a homestead exemption that Kenneth now seeks to assert came to him only as a consequence of his marriage to Katherine. Ark. Const. art. 9, § 3. The existence of a family is necessary to the acquisition of a homestead. *Stanley, supra.* Additionally, apart from his family, a debtor seeking a homestead exemption is entitled to no special consideration. *Harbison, supra.* Further, a spouse will retain his or her homestead by marriage even if through no fault of his or her own he or she is deserted, or his or her children leave. *Stanley, supra.* When Kenneth murdered his wife, he was the sole reason the marriage giving rise to his homestead right was terminated. Upon his wife's murder, all public policy reasons to uphold a homestead right evaporated. Also, Kenneth sought protection in a court of equity and now seeks protection in this court from a judgment arising from injuries caused by his act of murder.

■ We hold that where a person murders his or her spouse, any homestead rights that person enjoys personally by reason of the marriage to the murdered spouse are extinguished by the murder. The murder would not, however, affect any homestead rights arising from the murderer's status as head of household where such rights are necessary to provide the homestead protections to children or other dependents of the murderer. *See Hollis v. State*, 59 Ark. 211 (1894), wherein this court noted that where a man was prosecuted in a criminal case and recovery of costs of prosecution were being sought against the man's home, his family continued to enjoy the homestead exemption even though the father had escaped from prison and abandoned them.

■ ■ This conclusion is reached based upon public policy underlying the homestead exemption, the cases cited, and on the general principles that a court of equity is a court of conscience wherein justice is done sometimes stripped of technicalities and red tape, and because a court of equity should consider the relative positions of the various parties and render a decree that does substantial justice to all. *Whitaker & Co. v. Sewer Improvement Dist. No. 1*, 229 Ark. 697, 318 S.W.2d 831 (1958). Further, courts of equity are careful to deny any man the advantage of his own wrong. *Sliman v. Moore*, 198 Ark. 734, 131 S.W.2d 1 (1939). Additionally, it is a familiar principle of law that one who wrongfully kills another is not permitted to share in the other's estate, to collect insurance on his life, or otherwise to profit by the crime. *Horn v. Cole*, 203 Ark. 361, 156 S.W.2d 787 (1941). Finally, one who wrongfully kills will not be allowed to profit by it. *Luecke v. Mercantile Bank of Jonesboro*, 286 Ark. 304, 691 S.W.2d 843 (1985).

### Adverse Interest Arising From Refusal to Respond to Discovery

■ Kenneth asserts the trial court abused its discretion in ordering as a sanction for his refusal to respond to discovery that an inference was established that he transferred or conveyed all or substantially all of his assets and was thereby made insolvent. Kenneth fails to provide authority for his assertion that the trial court's decision on the discovery was an abuse of discretion. The failure to cite authority is sufficient reason for affirmance of the trial court's ruling on this point. *Womack v. Foster*, 340 Ark. 124, 8 S.W.3d 854 (2000). However, in any event, Ark. R. Civ. P. 37(b)(2)(A) specifically provides for the sanction imposed.

*Attorney's Fees*

█ Kenneth complains of fees assessed as costs against him by the trial court in an order dated May 24, 1999. Ark. R. Civ. P. 17(c) provides:

> (c) *Prisoners*. No judgment shall be rendered against a prisoner in the penitentiary until after a defense made for him by his attorney, or, if there is none, by a person appointed by the court to defend for him.

Pursuant to this rule, Christopher O. Carter was appointed to represent Kenneth by an order dated February 14, 1997. Arkansas Code Annotated § 16-61-109 (1987) provides for payment of fees of appointed counsel:

> A guardian or attorney appointed on the application of the plaintiff to defend for an infant, person of unsound mind, or prisoner shall be allowed a reasonable fee for his services, to be paid by the plaintiff, and taxed in the costs.

The trial court awarded reasonable fees pursuant to Ark. Code Ann. § 16-61-109 (1987), to be paid by the appellees, who were plaintiffs below, but taxed them as costs against appellants, who were defendants below. The statute must be interpreted. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997).

█ The statute provides that the attorney appointed shall be allowed a reasonable fee. The word "shall" is now considered mandatory in spite of earlier cases that indicated otherwise. *Ramirez v. White County Cir. Ct.*, 343 Ark. 372, 38 S.W.3d 298 (2001). Thus, the attorney will receive reasonable fees. The statute further provides that the fees are to be paid by the plaintiff. The May 24, 1999, order stated that pursuant to Ark. Code Ann. § 16-61-109, the entire attorney fee awarded Carter is taxed as cost against Kenneth G. Middleton and Lynn Carl Middleton. The trial court's decision to assess costs against the Middletons appears to be based at least in part upon their failure to provide an adequate response to requests for information on the sale of the Middleton homeplace.

Thus, it appears this decision is based at least in part upon possible violations of Rule 37 of the Arkansas Rules of Civil Procedure rather just than on the cited statute. An award of costs is within the sound discretion of the trial court. *Whorton v. Gaspard*, 239 Ark. 715, 393 S.W.2d 773 (1965); *Lyle v. Latourette*, 209 Ark. 721, 192 S.W.2d 521 (1946); *First Nat'l Bank of Clarksville v. Scranton Coal*, 178 Ark. 643, 12 S.W.2d 6 (1928). However, the statute indicates attorney's fees shall be provided, shall be paid by the plaintiff, and taxed in the costs. This issue must be reversed and remanded for the trial court to determine what costs will be taxed against plaintiffs as a fee and what, if any, costs may otherwise be taxed against the Middletons under the trial court's right of assessing costs in equity. First Nat'l Bank of Clarksville, supra.

We affirm in part, and reverse and remand in part.

IMBER, J. dissents.

ANNABELLE CLINTON IMBER, Justice, dissenting. I write to express my strong disagreement with the majority's Rule 41(b) holding in this case. Furthermore, although I concur with the majority's conclusion that the *res judicata* doctrine is inapplicable because the trial court's two dismissals pursuant to Ark. R. Civ. P. 12(b)(6) were not final judgments on the merits, I cannot agree with several statements made by the majority regarding the *res judicata* issue.

In support of its conclusion on the *res judicata* issue, the majority opinion states: "The issue of fraudulent conveyance in fraud of creditors under the Fraudulent Conveyance Act was not considered or adjudicated by the trial court in the two dismissals under Rule 12(b)(6)." According to the majority opinion, the appellees did not raise the fraudulent-transfer issue until they filed their third amended complaint on June 12, 1992. That statement, however, is not entirely accurate. Although the appellees did not make a fraudulent-transfer allegation in their original complaint, they filed an amended complaint on April 15, 1991, which contained the following allegations:

> that following the murder of his spouse, defendant has attempted to divest himself of a portion of the real property at issue in this case to a family member for inadequate financial consideration, with the fraudulent intent of depriving plaintiffs of recovery.

\* \* \*

that [the appellees] will be irreparably harmed if this court does not impose a constructive trust upon the defendant and his property, in that the defendant will render himself insolvent in order to deprive them of any recovery.

The amended complaint was filed after the warranty deed conveying the Middleton homeplace from Kenneth Middleton to Lynn Carl Middleton was recorded on March 7, 1991. Thus, the issue of a fraudulent transfer was raised for the first time in the amended complaint filed on April 15, 1991. The trial court entered its first order of dismissal pursuant to Rule 12(b)(6) on September 18, 1991. In that order, the trial court ruled that "*the case* should be dismissed under Rule 12b, 6 because it states no cause of action *as the pleadings now stand.*" (Emphasis added.) The order also provided that the dismissal be "subject to the right of the [appellees] to plead further within twenty days facts which show this court a property interest upon which a constructive trust might rest." Thereafter, the appellees filed their second amended complaint against the appellants and realleged the allegations contained in their original and amended complaints. On May 26, 1992, the trial court granted a motion to dismiss under Rule 12(b)(6) and dismissed the appellees' complaint as amended, except as to claims (1) that a trust should be placed on certain personal property and (2) that a constructive trust should be placed on the Middleton homeplace for the decedent's interest therein that allegedly resulted from the use of marital funds to construct certain improvements on the property. It is therefore clear that the appellees' fraudulent-transfer allegation was made twice and dismissed twice pursuant to Rule 12(b)(6) before the appellees filed their third amended complaint on June 12, 1992. The majority's statement to the contrary is simply not supported by the pleadings in this case.

The majority also states that the appellees did not allege a fraudulent transfer in their amended complaint because they did not make Lynn Middleton a party. Likewise, the majority asserts that no allegation of a fraudulent transfer was made in the second amended complaint because, although Lynn was made a party, he was only made a party as to the appellees' personal property claims. Each of these assertions merely reflects the basis for a Rule 12(b)(6) dismissal by the trial court, and, thus, is nothing more than a red herring. The appellees were *attempting* to bring a fraudulent-transfer claim in their amended and second amended complaints, but failed to sufficiently state the claim in both pleadings. That is precisely the reason the trial court dismissed the claim twice. By the majority's reasoning, if a plaintiff attempts to bring a claim but fails to state sufficient

facts or name the correct party, thus resulting in a dismissal of the claim, we should act as though the allegation was never made or dismissed. Such reasoning ignores the entire premise of a Rule 12(b)(6) dismissal.

The following statement by the majority raises yet another red herring: "In fact, a cause of action under the Fraudulent Conveyance Act could not have been brought by the appellees until after the Missouri judgment was entered on May 26, 1992, the same date as the second dismissal." Whether or not the appellees could have brought the claim in their amended and second amended complaint is entirely irrelevant. The important fact is that they were *attempting* to bring the claim. When a party attempts to bring a claim but does so prematurely, the claim is subject to being dismissed under Rule 12(b)(6), which is exactly what happened here. I cannot agree with the majority that a Rule 12(b)(6) dismissal of a premature claim should simply be ignored.

In any event, the majority's statement that a cause of action under the Fraudulent Conveyance Act could not have been brought by the appellees until after entry of the Missouri judgment on May 26, 1992, is not supported by law. The Arkansas Fraudulent Transfer Act, prohibits fraudulent transfers "as to present and *future creditors*." Ark. Code Ann. § 4-59-204 (Repl. 1996) (emphasis added). Section 4-59-204(a) states, in relevant part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, *whether the creditor's claim arose before or after the transfer was made or the obligation was incurred* ...." (Emphasis added.) Furthermore, a "creditor" for purposes of the Act, is any person "who has a claim." Ark. Code Ann. § 4-59-201(4) (Supp. 1999). Moreover, the term "claim" is defined as "a right to payment, *whether or not the right is reduced to judgment*, liquidated or unliquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed, legal, equitable, secured, or unsecured." Ark. Code Ann § 4-59-201(3) (emphasis added). Pursuant to the provisions of the Arkansas Fraudulent. Transfer Act, the appellees need not have obtained a judgment in Missouri in order to bring a claim for fraudulent transfer. Their fraudulent-transfer claim could have been asserted when the appellees filed the amended and second amended complaints in this case.[1]

---

[1] Although not cited by the parties, Rule 18(c) of the Arkansas Rules of Civil Procedure states, in relevant part: "In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, *without first having obtained a judgment establishing the claim for money*." (Emphasis added.)

My strongest disagreement, however, is with the majority's analysis of the two-dismissal rule under Rule 41(b). The question presented is as follows: When there are two involuntary dismissals pursuant to Ark. R. Civ. P. 12(b)(6), does the second Rule 12(b)(6) dismissal operate as an adjudication on the merits pursuant to Rule 41(b)? Rule 41(b) states, in relevant part, that "[i]n any case in which there has been a failure of the plaintiff to comply with these rules[,]" the plaintiff's case may be involuntarily dismissed. The rule further states: "A dismissal under this subdivision is without prejudice to a future action by the plaintiff unless the action has been previously dismissed, whether voluntarily or involuntarily, in which event such dismissal operates as an adjudication on the merits." Ark. R. Civ. P. 41(b). In *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997), the case was voluntarily nonsuited under Rule 41(a)(1), refiled, and then dismissed pursuant to Rule 12(b)(6). We held that the Rule 12(b)(6) dismissal should have been with prejudice pursuant to Rule 41(b). *Id.* Thus, a second dismissal of a case under Rule 12(b)(6) qualifies as an involuntary dismissal for Rule 41(b) purposes.[2]

We still must determine whether, for purposes of Rule 41(b)'s two-dismissal rule, the first dismissal may also be a Rule 12(b)(6) dismissal; that is, whether two dismissals pursuant to Rule 12(b)(6) satisfy the requirements of Rule 41(b)'s two-dismissal rule so that the second Rule 12(b)(6) dismissal operates as an adjudication on the merits. The majority concludes that the first dismissal must be pursuant to Rule 41 instead of Rule 12(b)(6): "This case has never been dismissed voluntarily or involuntarily under Rule 41." However, according to the plain language of Rule 41(b), the first dismissal may be *any* voluntary or involuntary dismissal. We held in *Baker v. Ralston*, 326 Ark. 575, 932 S.W.2d 325 (1996), that Rule 41(b) is expressly addressed to a situation similar to the one presented here where there has been more than one dismissal, whether voluntary or involuntary. Although Rule 41 provides that a plaintiff may take a voluntary nonsuit without prejudice, there is a limit to the number of times a case can be dismissed, regardless of whether the dismissals are voluntary or involuntary. *Id.*; *See* reporter's notes to Rule 41.

---

[2] The majority opinion does not disagree with this court's holding in *Brown v. Tucker, supra*; nor have we been asked to overrule that holding. The majority confuses a dismissal on the merits under the doctrine of *res judicata* with a Rule 12(b)(6) dismissal when it attempts to distinguish *Brown v. Tucker* by suggesting that the appellees' fraudulent conveyance claim "was not decided by the trial court when it granted the two motions to dismiss under Rule 12(b)(6)."

In summary, pursuant to our holding in *Brown v. Tucker, supra,* the second dismissal may be a dismissal under Rule 12(b)(6), and pursuant to the plain language of Rule 41(b) and our holding in *Baker v. Ralston, supra,* the first dismissal may also be a dismissal under Rule 12(b)(6). It makes no sense to hold, as the majority does, that one dismissal for Rule 41(b) purposes may be under Rule 12(b)(6) but the other may not. The majority's opinion effectively means that a claim may be filed and refiled an endless number of times, despite being repeatedly dismissed on Rule 12(b)(6) grounds, until the applicable statute of limitations expires.

For the above stated reasons, I respectfully dissent. The chancellor's order denying appellants' motion to dismiss should be reversed and this case should be dismissed.