The Honorable Paul Miller State Senator Post Office Box 488 Melbourne, AR 72556-0488
Dear Senator Miller:
I am writing in response to your request for my opinion on the following questions:
 1. Does Act 2284 [of 2005] become applicable only when real property "changes hands" or ownership[?] In other words, does Act 2284 only become applicable in traditional" buy/sell" property transactions when revenue stamps are issued?
 2. Does Act 2284 become applicable when, for instance, a parent deeds to a child a parcel of property, reserving a life estate, but revenue stamps are not issued in such transaction?
 3. Does Act 2284 become applicable if the parent dies and the child inherits the property?
 RESPONSE
With respect to your first question, under the express terms of the legislation, only a sale of property will trigger the application of Act 2284 of 2005, which mandates lifting the caps on annual property tax increases imposed by Amendment 79 whenever "a person sells his or her real property." With respect to your second question, if a parent conveys a fee interest to a child without receiving payment therefor, Act 2284 will not apply. If the parent receives payment but retains a life estate, the life tenant will remain the taxpayer until his possessory interest ceases. Under such circumstances, it would be unclear whether, notwithstanding the provisions of Act 2284, the caps mandated by Amendment 79 would continue to apply to the life tenant. Given the express terms of Act 2284, I believe the answer to your third question is "no."
Question 1: Does Act 2284 [of 2005] become applicable only whenreal property "changes hands" or ownership[?] In other words,does Act 2284 only become applicable in traditional "buy/sell"property transactions when revenue stamps are issued?
In my opinion, on its face, Act 2284 of 2005 will apply only when there has been a sale of real property.
Act 2284 provides:
 For An Act To Be Entitled
 AN ACT TO CLARIFY PROVISIONS OF AMENDMENT 79 TO THE ARKANSAS CONSTITUTION WITH REGARD TO THE ASSESSED VALUE OF REAL PROPERTY AFTER A TRANSFER OF TITLE; AND FOR OTHER PURPOSES.
 Subtitle
 AN ACT TO CLARIFY PROVISIONS OF AMENDMENT 79 TO THE ARKANSAS CONSTITUTION WITH REGARD TO THE ASSESSED VALUE OF REAL PROPERTY AFTER A TRANSFER OF TITLE.
 BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. Arkansas Code Title 26, Chapter 26, Subchapter 11 is amended by adding an additional section to read as follows:
 26-26-1122. Transfer of property.
 (a) When a person sells his or her real property,
the county assessor shall assess the real property at twenty percent (20%) of the appraised value at the next assessment date after the date of the transfer.
 (b) The owner of real property to whom title is transferred is not entitled to claim any limitation on the assessed value of the real property until the second assessment date after the date of the transfer.
 SECTION 2. EFFECTIVE DATE. Section 1 of this act shall be effective on and after January 1, 2006.
 (Emphases added.)
As reflected in its title, Act 2284 marks a legislative effort to "clarify" the provisions of Ark. Const. amend. 79, which, interalia, provides that in the year following a countywide reappraisal of property, the assessed value of a taxpayer's property may not be increased by more than 5% in the case of homestead property or by 10% in the case of other property. In effect, Act 2284 declares that these caps will not apply in the year following a sale and that the purchaser will be assessed on the property at a full 20% of its appraised value.[1]
The highlighted language in the new A.C.A. § 26-26-1122(a) expressly refers only to a sale, not to any other variety of conveyance. In this respect, the language resembles that used in A.C.A. § 26-26-1120(b)(1) (Supp. 2003), which provides:
 When a disabled person or a person sixty-five (65) years of age or older sells his or her real property, the purchaser shall not be entitled to claim any reduction to the property's assessed value.[2]
 (Emphasis added.)
 At issue in your question is whether the legislature intended the term "sells" in Act 2284 to be read literally or to apply to any conveyance by which title is transferred. In addressing this question, I am guided by several principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765, 68 S.W.3d 289, 292
(2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State, 347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis, 335 Ark. 188, 979 S.W.2d 894 (1998). Finally, the title of an act, although not controlling, may serve to resolve ambiguities in the body of the act. See, e.g., Routh Wrecker Service Inc. v. Wins, 312 Ark. 123, 847 S.W.2d 707 (1993).
In the present case, Act 2284 is absolutely unambiguous in providing that property will be assessed at 20% of its true appraised value at the next assessment after a person "sells" his or her real property. A "sale" is "[t]he transfer of property or title for a price." Black's Law Dictionary (8th ed. 2004) (emphasis added). I appreciate that the title and subtitle of Act 2284 refer more broadly to "a transfer of title" as opposed to a "sale." However, in my opinion, there is no ambiguity in the body of Act 2284, and it would consequently be inappropriate to refer to the title of the act in order to determine the legislature's intent. Although this conclusion might be somewhat troubling in that it could result in the divergent treatment of similarly situated taxpayers, possibly giving rise to an equal protection challenge, I can only note that Act 2284 says what it says. Any remedy of a perceived problem with this statute must be left to the legislature or to the judiciary.
Question 2: Does Act 2284 become applicable when, for instance,a parent deeds to a child a parcel of property, reserving a lifeestate, but revenue stamps are not issued in such transaction?
In my opinion, based upon the analysis set forth in my response to your first question, if the conveyance to the child of a fee simple interest in the property were unsupported by consideration — i.e., if the transaction were not a "sale" — the answer to your question would clearly be "no."
My analysis would be somewhat more complicated if the conveyance were supported by monetary consideration. The immediate question under such circumstances would be who should appropriately be subject to taxation — the remainderman owner of the fee interest or the owner of the life estate. This question is directly answered in A.C.A. § 26-35-301 (Repl. 1997), which provides:
 (a) Every person shall be liable to pay tax for the lands, town, or city lots of which he may stand seized for life, by curtesy, or in dower, or may have the care of as guardian, executor, or administrator, or as agent or attorney, having the funds of the principal in his hands.
 (b) It shall be the duty of each person holding lands as indicated to pay the taxes which may be assessed thereon each year.
(Emphasis added.)[3] As reflected in the highlighted excerpt, it is apparent on the face of this statute that the owner of a life estate has the duty to pay taxes on the property.See Acord v. Acord, 70 Ark. App. 409, 416, 19 S.W.3d 644 (2000) (acknowledging this obligation); compare Middleton v. Lockhart,344 Ark. 572, 580, 43 S.W.3d 113 (2001), which provides:
 If someone holds a life estate, he is the one entitled to the homestead exemption, and the remainderman has no right to an exemption. Brooks v. Goodwin, 123 Ark. 607, 186 S.W. 67 (1916).
Logic might suggest that if a mother sells a fee interest in property to her son but retains a life estate in that property, the caps on tax increases imposed by Amendment 79 should continue to apply. This logic would appear to be particularly compelling with respect to property that the mother continues to use as her homestead. However, no statute or case law exists holding to this effect, and this conclusion might be deemed to conflict with Act 2284, which, literally read, appears to call for a lifting of Amendment 79 caps upon any sale of property. Needless to say, if a court found this statutory provision of law inconsistent with Amendment 79, the constitutional provision would control. However, statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v.Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss,329 Ark. 302, 947 S.W.2d 770 (1997). If it is possible to construe a statute as constitutional, a court must do so. Jonesv. State, 333 Ark. 208, 969 S.W.2d 618 (1998). With respect to the statutes at issue, a court might narrowly define the term "sells" as denoting only a transaction in which an owner of a fee simple interest divests himself of that entire interest through a sale. Judicial or legislative clarification appears warranted.
Question 3: Does Act 2284 become applicable if the parent diesand the child inherits the property?
For the reasons set forth in my response to your first question, I believe the answer to this question is "no."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
MB/JHD:cyh
[1] You have not asked, and I will not address, whether the legislature might be precluded by operation of Amendment 79 itself from removing the cap on annual increases in the assessed value of real property. In the attached Opinion No. 2004-300, I opined that "[t]he provisions of Amendment 79 are ambiguous with respect to the question of whether the conveyance of property subject to either of the referenced caps would warrant lifting the cap on the purchaser's assessments until, possibly, the next reappraisal warrants reimposing a cap." I declined to predict whether a reviewing court would uphold as constitutional legislation of the sort at issue in your request. Fur purposes of my discussion here, I will presume that the legislation is constitutional.
[2] In the attached Ark. Op. Att'y Gen. No. 2004-300, n. 1, I offered the following discussion of this statute:
 [T]he quoted provision would survive constitutional challenge with respect to any purchaser who is himself disabled or over the age of 65 only if read as being qualified by subsection 1(d)(1)(A) of Amendment 79, which provides:
 A homestead used as the taxpayer's principal place of residence purchased or constructed on or after January 1, 2001 by a disabled person or by a person sixty-five (65) years of age or older shall be assessed thereafter based on the lower of the assessed value as of the date of purchase or construction or a later assessed value.
(Emphasis added.) It appears clear on the face of this provision that if a person who is disabled or over 65 buys a homestead from a seller who is likewise disabled or over 65, the buyer will be entitled to the same reduction as was the seller. Notwithstanding the statute's silence on this issue, I do not believe that the legislature intended to include such a buyer within the scope of the statute.
[3] With respect to the life tenant's duty to protect the remainderman's interest in the property, A.C.A. § 26-35-302
(Repl. 1997) further provides:
 If any person who shall be seized of lands for life shall neglect to pay the taxes thereon so long that the lands shall be sold for the payment of the taxes and shall not within one (1) year after the sale redeem them according to law, the person shall forfeit to the persons next entitled to the land in remainder or reversion all the estate which he, so neglecting as indicated, may have in the lands. The remainderman or reversioner may redeem the lands in the same manner that other lands may be redeemed after being sold for taxes. The person, so neglecting as indicated, shall be liable in an action to the next entitled to the estate for all damages that person may have sustained by the neglect.